### Lucas et al. v. Atwood et al.

1. The creditors of a copartnership are entitled to be first paid out of the copartnership effects, to the exclusion of the creditors of an individual partner.
2. Chancery will lend its aid to a creditor to pursue an equitable fund for the satisfaction of his debt, provided he cannot obtain satisfaction at law.
3. And when such creditor has subjected such fund by reason of his superior diligence, he will be entitled to retain it, and it will not be subjected to distribution among creditors generally.
4. And the creditor who first applies to Chancery for the benefit of the equitable fund, is entitled to a preference.
5. Courts of equity regard rather matters of substance in determining the rights of parties, than mere technicalities.

This was an appeal sued to this Court by John R. Lucas, and Wyman & Clarke, to reverse a decree in equity rendered in the Circuit Court of Madison county, at April term 1828. The facts of the cause are numerous, and the record very voluminous, but so far as material to the decision, they are recited in the opinion delivered by the Chief Justice, and are as follows:

The appellant Lucas was the holder of a note for upwards of $6,000, made by S. D. Hutchings, & Co. a firm composed of the said S. D. Hutchings, who was Atwood's intestate, and of one Henry C. Bradford; upon this note Lucas brought suit in 1820, on the common law side of Circuit Court, for the county of Madison, against the said Hutchings & Bradford, as partners composing the firm of S. D Hutchings & Co. Pending the suit, Hutchings died, and his death was suggested on the record, and the suit as to him abated. In 1821, judgment was rendered against Bradford, for the amount of the note, on which judgment, an execution issued against his goods and chattels, &c. which was returned *nulla bona*. After they had given the note, on which Lucas had brought suit, one A. D. Veitch became indebted to the firm in the sum of $5,000,

for which he gave his note. The copartnership was dissolved in 1820, and by the terms of the dissolution, Bradford assigned all his interest in the firm to Hutchings. On the day after this dissolution, and before it was known, Bradford, without the knowledge of Hutchings, transferred Veitch's note, by indorsement in the name of the firm, to the Planter's and Merchant's Bank of Huntsville, in payment of his own individual debt, due to the bank.

Hutchings, afterwards filed his bill in Chancery against the bank and against Veitch & Bradford; upon which the bank was injoined from collecting, and Veitch from paying the note. The bill alleged, that the consideration of Veitch's note was for the stock of goods sold by the firm of S. D. Hutchings & Co. and that the firm was greatly in debt, and owed for those very goods for which the note had been received; and prayed that the President and Directors of the bank might be compelled to surrender the note. Pending this suit in Chancery; Hutchings died, and Atwood had the bill revived in his name, as the administrator of Hutchings. Veitch's note was payable in notes on solvent persons, and shortly after the bill was filed, a receiver was appointed to receive from Veitch, notes in discharge of his own, to collect them, and hold the proceeds subject to the further order of the Court. In 1825, the Chancellor made a final decree, so far as the bank was concerned, by which the President and Directors were required to deliver the note up to Atwood, and to pay over to him any money that they had collected on it; and the suit was continued as to Veitch and Bradford.

Immediately after this decree, Lucas, the appellant, filed his bill against Atwood & Veitch, for the purpose of subjecting to the satisfaction of his judgment, such money as might be paid over to Atwood, and the amount that should be ascertained to be due from Veitch on a final hearing, on account of the insolvency of the makers of some of the notes he had placed in the receiver's hands.

Some time after Lucas' bill had been filed, Wyman & Clarke sued the said Henry C. Bradford as surviving copartner, who resided beyond the limits of this State, by an original attachment, and had Veitch garnisheed, who appeared in Court, and answered that he was indebted to Bradford, as survivor, twenty-five hundred dollars, and the Court gave judgment against him for the amount admitted by him to be due, in favor of Wyman & Clarke. Veitch did not disclose to the Circuit Court the pendency

of the bill of Atwood, as survivor, against him and Bradford, the existence of the injunction, nor that Lucas had filed a bill against him and Atwood. After discovering that he had committed himself by his negligence, and that he was likely to have the amount due from him to pay twice, he filed his bill of interpleader against Lucas, Atwood and Wyman & Clarke, and obtained an injunction against the two last, injoining them from proceeding on the judgment they had obtained against him. The insolvency of Hutchings & Bradford at the time of the dissolution of the copartnership, and ever since, was admitted or proven. The bills all came on for a final hearing at the same term, and the Chancellor dismissed Lucas' bill; perpetually injoined Wyman & Clarke from proceeding on the judgment they had recovered against Veitch; and decreed that Veitch should pay the balance due on his note to Atwood; that the receiver should also pay him what money he held in his hands, and that Atwood should give bond, to pay over the proceeds to the creditors of S. D. Hutchings, & Co. after deducting ten per centum, which he was authorised to retain for his services and trouble. From this decree, Lucas and Wyman & Clarke appealed.

HOPKINS, and KELLY for the appellants. The debt due from Veitch, was a part of the partnership effects of the firm of S. D. Hutchings & Co. and liable exclusively for the payment of the debts due the firm, until such debts were satisfied;[a] and it was liable to the satisfaction of the debt due from the firm to Wyman & Clarke in the mode they pursued.[b] But if the said debt was not liable to the satisfaction of the debt due to Wyman & Clarke, Lucas was entitled to the relief he prayed for in his bill, and the suit of Wyman & Clarke opposed no obstacle to the recovery by Lucas of that part of the note of Veitch, which had been paid to the receiver.[c] The matters alleged by Atwood in his answer, to avoid the debt due from his intestate to Lucas, not being proved, are no defence, and cannot affect the right of Lucas to recover as a creditor of the firm of S. D. Hutchings & Co.[d]

THORNTON, and BRANDON, for the appellees.

By LIPSCOMB, C. Justice. It will be readily perceived, from the facts of the case, that we are now called on to settle a contest among the creditors of the firm of

a. Gow on Partnership, 317-318. 15 Ves. 562-563.
b 1 Montague on Part. 142 & note ss. N. Car. R. 124. Watson on Part. 269-458 to 462. Laws of Ala. 12.
c 2 John. Ch. R. 508. Wat. on Part. 269.
d 9 Cranch, 160. 14 John. R. 63. 2 John. Ch. R. 68. 1 John. R. 580, 582, 589.

JANUARY 1830.

Lucas et al.
v.
Atwood et al.

S. D. Hutchings & Co. who shall be first paid out of the equitable fund, under the control of Chancery, by the decree against the bank. Until that decree had been rendered, there was but little prospect of satisfaction at law or in equity. In order to determine on the rights of the respective claimants, it will not be improper to go back and inquire in what character Atwood became the holder of that fund. If it was in his representative character of administrator of Hutchings, it would seem that he held the fund, subject only to the payment of Hutchings' debts, for so long as Bradford was alive, he could not at law, lose his distinctive character of surviving partner, nor could the representative of his deceased partner, as such sue or be sued, on account of the firm. [a] The bank had, in discharge of the debt of Bradford, received a note due to the firm. Now, had there been no creditors on the joint stock of the firm, the bank could justly have claimed at least Bradford's share of the note at the time it was transferred. But it is a principle too well settled, to require the aid of argument or authority, that all of the copartnership effects must first be subjected to the payment of the debts of the firm, before any part thereof can be applied to the payment of the individual debt of a member of the firm. This doctrine is clearly laid down by Gow on Copartnerships, and by Watson, and every author who has written on the subject. It is founded in reason and morality, and ought to be strictly enforced. If credit has been obtained on the united stock of the firm, all the effects of the firm should be responsible for a credit so acquired. A different rule would have a great tendency to check and cramp trade and commerce, as few would be willing to credit a firm, if the profits in their trade could be taken and applied to the payment of the individual debt of any member of the firm. It was the influence of this principle, governing partnership transactions, based on the fact, that it had been abundantly proved that the copartnership was irretrievably involved in debt, that produced the decree against the bank. At the time of this decree, none of the creditors were known. Atwood, the representative of Hutchings, presented himself to the Chancellor, not as claiming the restitution of the note from the bank, that it might be assets in his hands for the payment of his intestate's debts, but as one under the peculiar circumstances of the case, interested in seeing that there should be no misapplication of the funds of the firm;

[a] See Gow, 174.

JANUARY 1830.

Lucas et al.
v.
Atwood et al.

the surviving partner had attempted to commit a fraud on the firm creditors, and had eloped. Under such circumstances, the Chancellor was called on to direct some person, in whose integrity he could more safely rely, to manage this fund and hold it subject to such further order as might be thought equitable and just; always having in view the protection, as far as it would go, of the copartnership creditors. There was another consideration in favor of making Atwood the trustee. By the terms of the dissolution of the copartnership of S. D. Hutchings & Co., Bradford had transferred to Hutchings, all his interest in the firm, and had surrendered to him the task of closing the business of the concern, as he expressed it, for the purpose of protecting Hutchings from losses he had individually suffered from the transactions of the firm. This assignment, although it afforded Hutchings no immunity against the debts of the firm, it gave him the control of all settlements relative to it. It will be recollected too, that the evidence shewed that Bradford had eloped, and there was no person to contest Atwood's right to represent the creditors of the firm. It would perhaps, have been more correct, to have directed the proceeds of the notes to be retained by the receiver, for the benefit of creditors, in the order in which they should shew themselves entitled to it; if this had been done, there would have been no pretence for supposing that Atwood had acquired any title to the fund, merely as the administrator of Hutchings. It was not however, considered by the Chancellor, that he was any thing more than the holder of a trust fund, for the benefit of creditors. Had there been an interpleader by a creditor, before the decree against the bank was made, his interest would have been immediately disposed of without remitting him to Atwood; at least, this is the fair presumption from the facts. The decree, however, is not complained of by either of the appellants. It is contended by the counsel for Lucas, that he is entitled to the funds in Atwood's hands, in satisfaction of his judgment against Bradford, on the ground of his superior diligence in pursuing this equitable fund. The principle is believed to be well settled, that a Court of Chancery will lend its aid to the creditor of a firm in the pursuit of an eqitable fund, for the satisfaction of his debt; and that he may wait any lapse of time for such a fund resulting from a trust, on condition that he has no remedy remaining at law. This rule was acknowledged as early as the time of Lord Nottingham.

In 1 Peere Williams, a case prior to that time was referred to, in which his Lordship is holden to have said "that a plaintiff must go as far as he can at law, by suing a *fi. fa.* and getting it returned *nulla bona*, and that then he might file a bill." The same doctrine is recognised by Chancellor Kent, in the case of *M'Dermott v. Strong,* [a] and in the two preceeding cases in the same volume, of *Williams v. Brown* and *Brinckerhoff v. Brown.* The principle upon which this rule has been established is, that all the funds of a debtor, whether in equity or at law, should be held subject to the payment of his debts, and as in every other case, if the creditor has a complete remedy at law, he is required to resort to that tribunal. If the fund is an equitable one, in the hands of a trustee, it must be sought through the medium of a Court of Chancery; that a creditor must always obtain judgment at law, and the return of a *fi. fa. nulla bona,* as laid down by Lord Nottingham, in the case above referred to, does seem to me to be subject to some exceptions, if not, and it is one of universal application, it would some times happen that an equitable fund of the debtor would be placed beyond the reach of his creditor.

JANUARY 1830

Lucas et al.
v.
Atwood et al.

a 4 John. Ch. R. 687.

Let us take the facts as presented by the record before us, and see if they would not make out a case, where by this rule, the equitable fund could not be reached. The rule of the Courts of common law require something tangible for its process to operate on; otherwise, there can be no foundation for a judgment. Parties must be brought into Court by personal service, or by their goods and chattels, or lands. Bradford, the surviving partner, is insolvent and has absconded. There is no property belonging to the firm for the process to be served on. How is a creditor to recover judgment at law? The personal representative of the deceased partner could not be sued at law, whilst there was a surviving member of the firm. [a] From this aspect of the case, it does seem to me, that Lucas' bill ought to have been sustained, if he had never resorted to a Court of law to determine the amount, of his demand against the firm. How could he sue? Bradford had eloped without leaving any visible property; Hutchings was dead, and his administrator could not have acknowledged the right of priority in a firm creditor, even out of the effects of the firm; the administrator could not have distinguished this debt from that of an individual creditor of Hutchings alone. He had administered on Hutchings' own

a See Gow on Copartnerships as above cited.

personal property, and not on the firm, that could not be administered on; it was still in existence for all the purposes of a legal process, so long as a member of it survived; if they had been all dead, the administrator of the last, would be charged with the settlement of the business of the firm; Hutchings' administrators, if the property was not sufficient to pay his debts, would have been required under the statute of this State, to distribute the effects under the direction of the County Court among the several creditors; but this statute does not extend to copartnership transactions, that his intestate had been engaged in. Where there is a bankrupt or insolvent law applicable to copartnerships, the Court of Chancery will direct a distribution of an equitable fund of an insolvent firm under its control in proportion to the demands of the creditors. But in the absence of such statutes, the rule must prevail, that the creditor who uses superior diligence, must have the preference. Chancellor Kent acknowledges his inability to apportion among creditors in such a case, and whilst he regrets that in the race between contending creditors for a preference, the ends of justice are not always accomplished; he says emphatically, that he knows no rule to authorise a Court of Chancery to apportion an eqitable fund of a living person among his creditors.

We will now proceed to take another view of Lucas' rights, as presented on the final hearing of his bill, and contrast them with those of Wyman & Clarke. The last named creditors had obtained a judgment at law against Hutchings alone, perhaps about a year before Lucas obtained his judgment. The process in their favor, was sued out against Hutchings alone, not as a member of the firm, and their whole proceedings at law treated him in the same way, although the evidence of their debt seemed to be against the firm composed of Hutchings & Bradford. They had execution returned no property. About six years afterwards, and after Lucas had filed his bill to subject the equitable funds of the firm to the satisfaction of his debt, Wyman & Clarke commenced suit at law against Bradford, as surviving partner, who resided beyond the limits of this state, by an original attachment, founded on the same cause of action, on which they had recovered judgment against Hutchings, and revived judgment against him as survivor. From their suing Bradford in this form, it does appear, that they had abandoned their judgment against Hutchings, or that they did not consider it a judg-

ment against the firm; they had at all events elected their own tribunal, and if they had applied to one that could not afford them a remedy, the interest of Lucas, who had first applied for the equitable fund, ought not to be postponed in their favor. If, however, they did not lose the advantage of their judgment against Hutchings, by suing his surviving partner, yet that judgment was not against the firm; and for aught that appears to the contrary, they were content at the period of their judgment against Hutchings, to rely on his individual responsibility. How far this judgment, obtained by Wyman & Clarke, against Bradford, survivor, has acquired a lien on the equitable fund, will be now considered. They had obtained judgment against Veitch, as garnishee, by his very culpable negligence, in not disclosing in his answer that he had been required by the Chancellor to pay over the amount in his hands to Atwood; and also, the pendency of Lucas' bill against him; and he ought to be the sufferer for his own inattention to his rights; it ought not to afford him a ground of relief against Lucas. If he had paid the amount condemned in his hands, he could most probably be placed on the footing of a creditor of the firm *pro tanto;* but he would not be a preferred creditor one step beyond the creditor whose substitute he had been made. If Lucas had, by his superior industry, gained a preference over Wyman & Clarke, it could not be taken away from him; Veitch would have been fully protected against Wyman & Clarke; had he disclosed to the Court of law, the orders in Chancery operating on him; the Court of Chancery having assumed jurisdiction of the debt due from him, excluded all other jurisdictions. But for this negligence on the part of Veitch, nothing would have been condemned in his hands as garnishee, and the suit would consequently have failed for the want of something to operate on, as no property had been levied on. If, however, this judgment was regular, and I am not disposed, in this way, to question its correctness, it was much younger than Lucas' judgment, and would therefore, it appears to me, be forced to yield the precedence.

It will now be my purpose to inquire if Lucas' claim to the equitable fund in question, as derived from his judgment and execution, is such as to entitle it to the equitable cognizance of a Court of Chancery. The doctrine of equitable liens, as recognized to be settled by

Chancellor Kent, in *M'Dermott v. Strong,* [a] is, that when the creditor has fixed his lien at law, and exhausted his legal remedies, and then resorts to Chancery against equitable assets, his lien in Chancery will relate back to the time when it was acquired at law; this was as to the land of the debtor, at the date of the judgment; and as to the personalty, at the date of the execution. It is insisted, however, by the appellee's counsel, that no judgment has ever been obtained by Lucas, against the firm of Hutchings & Co. but that his judgment was against Bradford alone, and that his execution followed his judgment. This objection, though urged with much force and ability by the counsel for the appellees, does not seem to me available. It will be recollected, that the mere fact of judgment having been rendered against Bradford, and execution returned, no property, was not of itself relied on by the appellants to fix the liability of the firm; but that the whole proceedings in the case at law of Lucas v. Hutchings & Bradford were in evidence on the final hearing; from which it appears, that the suit was instituted against Hutchings & Bradford as composing the firm of S. D. Hutchings & Co. on a note made by them in the name of the firm, that they were both impleaded together. Hutchings then died, before judgment, and his death was suggested on the record, and suit continued and judgment taken against Bradford, without distinguishing him as surviving copartner. If it was at all necessary, that he should have been so called, it was a mere clerical misprision, and could not, it seems to me, affect the judgment. To prove this, let us inquire what was the attitude in which Bradford stood in Court at the period of the suit abating as to his partner by death. Was any set form of words essential to make him survivor, and to charge him as such? No, his destiny had made him such by his outliving his partner. If the record spoke truly when it announced the death of his copartner, he was as clearly made the survivor as if the most apt words in our language had been employed so to denominate him; and the judgment was essentially against him in that character. But admitting that the judgment was not perfect as to form, Chancery should never be astute in seeking out and sustaining slight objections and deviations from mere technical niceties in pleading, for the purpose of rejecting an equitable demand. The plaintiff certainly could have had his judgment formally entered up against Bradford as survivor, and exer

eution sued out against him as such. If this had been done, according to the opinion of the Chancellor who tried the cause below, and it is conceded by the appellee's counsel, it would have entitled him to a preference. I am of the opinion that the judgment, if good for any purpose, is good against the firm; after Bradford had been impleaded with his copartner as a member of the firm, his relationship to the firm could not be changed. It seems to me that the judgment is good as it is, but if not, that a Court of Chancery should in this case discard mere technical objections, and give the plaintiff, who is appellant, all the beneficial influence that could have resulted from it, had it been entered according to the most approved forms.

I am therefore of opinion, that Lucas had clearly made out his preference under his judgment, and has shewn himself to be the first execution creditor of the firm.

But to return again to an aspect of this case before noticed; suppose that it should be granted that the judgment of Lucas gave him no lien on the copartnership effects, what would be the conclusion drawn from such an admission. If Lucas could not from the peculiar circumstances of the case, go into a Court of law to establish his rights against the copartnership, as I think I have pretty clearly shewn that he could not, it does seem to me that he could resort to a Court of Chancery for relief and for satisfaction out of the trust funds; and if so, his preference would accrue from his having first sought that remedy. At the time he filed his bill, no other creditor had sought satisfaction from this fund, nor has any other since. Wyman & Clarke have not asked the aid of this Court, they have been brought here as defendants by Veitch; they can only be parties to this suit for the purpose of resisting the perpetuity of the injunction, and asserting the benefit of their judgment against Veitch; but it seems they claim no advantage from Veitch if he was not liable on the garnishment, and contend that the proceedings in Chancery ought not to bar their recovery; they are not willing to take advantage of his negligence; if they had insisted on the legal advantage they had gained, I do not see how they could have been deprived of it by the Chancellor, as Veitch would not be permitted to set up in his defence ignorance of what the law required him to do in answering the garnishment. This, however, is not an important consideration, nor is it necessary that it should

JANUARY 1830. be disposed of; the point is, that there was no other cred-
itor seeking satisfaction of his debt in Chancery from this

Lucas et al.
v.
Atwood et al.

trust fund but Lucas, and that he is therefore entitled to the preference.

On both aspects of Lucas' claim, I believe that he is entitled to satisfaction first, and as his claim would absorb the whole fund ,it is not necessary to say how the surplus would have been disposed of, if there had been any. The decree below, dismissing Lucas' bill with costs, must be reversed; and a decree rendered in his favor, that both Atwood and the receiver pay over to him the amount of the proceeds of Veitch's note, and that the administrator of A. D. Veitch, who has been made a party, pay over to Lucas any balance that remains unpaid on the note of his intestate, A. D. Veitch; provided, however, that the ten per centum, allowed to be retained by Atwood, may be deducted by the said Atwood, and retained by him as a compensation for his services. It is further ordered and decreed, that the decree perpetuating the injunction against Wyman & Clarke, be affirmed at their costs; and it is further ordered and decreed, that so much of the decree as decreed costs against Veitch, be, and the same is affirmed. And it is further ordered and decreed, that the costs of Lucas v. Atwood and Veitch, and of Atwood v. Veitch & Bradford, be paid out of the trust fund decreed to Lucas.

In this opinion the Court unanimously concur.