J. A. MILLER *versus* THOMPSON, H. D. MILLER *versus* THOMPSON, and HUFFMAN *versus* THOMPSON.

QUESTIONS IN THIS CASE.

*Upon the validity of a voluntary conveyance, to children, from a father.*

*As to the effect of a child's marriage, upon such conveyance.*

1. A voluntary conveyance of property, executed by a father, to his children, he being indebted at the time of executing the same, is void in respect to all previous creditors of the parent.
2. Whether such conveyances are void, with respect to the subsequent creditors of a parent, will depend on the *intent* with which they are executed.
3. Where such conveyance is made to a daughter, who afterwards marries, and the property passes, not into the husband's possession, but remains with the grantor; it will be held, void as to previous creditors; and the husband can take no title to the property conveyed, as against them.

In these several cases, trials of the right of property taken upon execution, were had, in the Circuit Court of Autauga, on claims instituted by the plaintiffs in error.

In the execution, Thompson was plaintiff, Henry Miller and Charles F. W. Miller defendants. The property in question consisted of slaves, one to each of the claimants.

The facts essential to a history of the case, were presented by a bill of exceptions, and were the same in each of the cases; except so far as the contrary is shewn, in the conclusion of this statement. They were as follow:

MILLER *vs.* THOMPSON.

The plaintiff in execution proved, that the property was levied on at the plantation of the defendant in execution, being then in his possession.— The claimants proved that, in March, 1829, the defendant in execution executed to them, (they being his children,) deeds of gift, for the slaves, one to each of them, which deeds were duly recorded in the clerk's office of the County Court; that, at the time of executing the same, the defendant, Henry Miller, the principal debtor was possessed of other property, amply sufficient to pay all his debts; that it consisted of twenty-one slaves, worth eight thousand dollars—lands, worth two thousand five hundred dollars—mills, worth three thousand dollars, and horses, cattle, household furniture, &c., worth eight hundred dollars.

On the part of the plaintiff in execution, it was further proved, that, at the time the defendant in execution made the deeds to these chilren, he also gave to these, and others of his chilren, all his slaves, except one, who was aged and infirm; that, at the time of doing so, he was indebted to the plaintiff in execution, the debt which is the foundation of the execution, under which the levy was made, and other debts, amounting, in all, to about five thousand dollars.

Upon this evidence, the claimants prayed the Court, to instruct the jury, that a voluntary conveyance, by a father to his child, the father being indebted at the time, was not fraudulent, *per se*, but, was a fact to be left to the jury; and, if he had a sufficiency of other property, to pay his debts, at the time of the voluntary conveyance, it was not such a circumstance as would, of itself, authorise the pre-

sumption of fraud: which charge the Court refused to give; but instructed the jury, that the first matter they had to consider, was, whether the defendant in execution, at the time of the voluntary conveyance, was indebted to the plaintiff in execution? If he was, it made no difference what amount of other property he had—the deed of gift was, as to him, fraudulent and void, *per se.*

In the last stated case, in which Huffman is claimant, the facts were the same; also, the charge of the Court—except, as follows: that, the conveyance being from the same donor, the defendant in execution, the gift was made to his daughter Ann, then a minor, who, about one year afterwards was married to said Huffman.

In reference to this case, the Court was further requested to charge the jury, that if a father indebted at the time, make a voluntary conveyance to his daughter; and the father, over and above the property given, has a sufficiency of property to pay all his debts, and his daughter subsequently marry, before a levy made upon the property, her husband is a purchaser for a valuable consideration; and, as such, should be protected—that, though the conveyance, as to the daughter, whilst sole, might be deemed fraudulent and void; yet the husband was entitled to claim, as a purchaser. All which the Court refused to charge; but, (in addition to the above instructions, which apply equally to all the cases,) charged, that if the father had made the deed of gift, in contemplation of the claimant's marriage with his daughter, and, it afterwards took place, the husband would be protected, as a purchaser; but, that if the gift was made to the daughter, before marriage, and

withont the same being then in contemplation, the husband, who might afterwards marry her, under the expectation, that the property was hers, was not entitled to be considered as a purchaser, so far as to be protected from the original consequences of such voluntary conveyance. To all which the claimants, (so far as related to each,) excepted.

They here assigned, as cause of error, that the Court refused to charge the jury as requested: on the contrary, charged as above stated.

Argued by *Mr. Goldthwaite*, for the plaintiffs in error; and, by *Mr. Dargan* and *Mr. Peck*, for the defendants.

SAFFOLD, C. J.—I will first examine the subject, in reference to the cases, in which the Millers are the claimants, and the other so far, only, as the same principles are equally applicable to it—leaving out of view, for the present, the effect of the mariage, on the latter.

The inquiry is presented, whether it is competent for a father, who is a debtor at the time, to make a voluntary conveyance of a portion of his property to a child, or children, so as to vest in them a valid title against the claim of his pre-existing creditors; though he retain at the time sufficient other property to pay his debts; or whether such conveyances are, in legal contemplation, fraudulent and void, as against such creditors?

So much of our statute of frauds, as is considered applicable to these questions, is in the following language —that " every gift, grant, or conveyance of lands," &c. or of "goods or chattels," &c. " by writing or other-

wise," "had, made and contrived, of malice, fraud, covin, collusion, or guile, to the end or purpose to de lay, hinder or defraud creditors of their just and lawful actions, suits, debts," &c. "shall be from henceforth deemed and taken only as against the person or persons, his, her or their heirs," &c. "whose debts, suits," &c., by such means, "shall, or might be, in any wise disturbed, hindered, delayed or defrauded, to be clearly and utterly void," &c. The import and effect of this statute is understood to be the same as that of the English statute of 13th Elizabeth, as far as they apply to this principle, and both are considered as declaratory of the common law.

That a voluntary conveyance, i. e. one not founded on a consideration deemed valuable in law, of all a debtor's property, or of so much as must unavoidably "delay, hinder, or defraud" his *existing* creditors, is fraudulent and void as against them, all must admit. The only doubt appears to be, whether such conveyance of the debtors property, and what proportion, will be free from this objection.

We may readily imagine the great difficulty and embarrassment, that must necessarily result from the adoption of the latter principle. One consequence must be, that all trials of the right of property thus conveyed, may involve inquiries, respecting the amount and validity of all claims and demands against the donor; of the amount and value of the property he possesses and claims, and the sufficiency of his title to the same. If, however, it be found, that such is the settled law, we, as a Court, without power to alter it, have only to acquiesce in the principle, and expound it accordingly.

It is insisted, on the part of the claimants, that

the principle has been so settled, on good authority. In support of the position, are cited, various decisions; among others, some made by this Court, under its former organization.    The first case relied upon, is that of *Toulmin* vs. *Buchanan's Ex'ors*.[a]    [a] 1 Stew. 67

It is true, that if we are bound to adhere to the principles of that decision, it justifies the position assumed, to its fullest extent.

The gift, in that case, was from Caller to his son-in-law, several months after his marriage, and at a time when it appeared that the donor was "much embarrassed by debts—much more than he was able to pay." The Court held, that if Caller had made a gift of *all* his estate the law would declare it fraudulent *per se*, and void against the creditors.  But, as the gift was of part only, it was *prima facie*, in advancement of the marriage, which is deemed, in law a valuable consideration; and that it was not void or fraudulent *per se*, but, a circumstance, which, if corroborated by other circumstances, might have authorised the jury to infer fraud.

The principle declared on that occasion, obviously requires further consideration. Since that, and the other decisions referred to, of this Court, all the members have been changed, except myself. How far I may have concurred in that opinion at the time, is not recollected, or material to my purpose.  We should proceed with reluctance, in any case, to overrule a principle of decision, once declared by the highest tribunal of the State, and which may have had its influence on the community : yet, we regard it as a solemn duty, to do so, if we discover it to be manifestly erroneous, and of a highly mischievous tendency.   Should

3 v. P.                    26

it therefore appear, upon examination of the authorities, (as I think it will,) that this decision is opposed to the current doctrine of the highest tribunals, it can have no binding influence upon us.

It is also to be observed, that this Court has long since departed from the principle of that decision, without expressly overruling it. We did so, in the case of *Cato* vs. *Easly*,[a] which has been referred to, on the part of the defendant in error. This latter case, too, has a direct application to these under consideration.

There, a voluntary conveyance was executed by a mother, then a widow, to her children. At the time of the conveyance she owed the debt, for the satisfaction of which, the suit, (which was in Chancery,) was instituted. The property was held subject to the debt, the language of the Court being, that it was a " legal inference, that a voluntary conveyance, made by one indebted at the time, is, as against such creditors, fraudulent and absolutely void."

A case equally applicable to these under consideration, and mainly relied on, by the counsel for the defendant in error, is that of *Read* vs. *Livingston*.[b] In that case, which related to a voluntary family settlement, the Chancellor reviewed numerous authorities, both English and American, with his usual ability. He decreed, that a voluntary settlement, after marriage, by a husband, in favor of his wife, by means of a deed in trust, was fraudulent and void, against all the donor's antecedent creditors : and that, without regard to the amount of the existing debts, or the extent of the property settled, or the circumstances of the party. But that, with regard to debts,

contracted subsequent to the settlement, he intimated, that the presumption of fraud, arising in law, from the party being a debtor at the time, may be repelled, by circumstances: as, that the antecedent debts were provided for, in the settlement, or otherwise secured; that, if the presumption of fraud, were not so repelled, subsequent creditors might impeach the settlement, by shewing antecedent debts, sufficient in amount, to afford reasonable evidence of a fraudulent intent; for, as on the one hand, showing an antecedent debt, however small or trifling, is not sufficient to render the settlement fraudulent and void—so, on the other hand, the subsequent creditor, to impeach it, is not obliged to prove, that the party was insolvent at the time.

The views of the Chancellor, and the authorities he quotes, subject all voluntary settlements or conveyances, whether in favor of the wife or children of the donor, to the same rules; and, the principles he has thus recognised, appear to me, to be as just, reasonable and consistent, as the very difficult and complex nature of the subject, will admit of.

Among the variety of cases, on which he rests his opinion, he notices the case of *Townsend* vs. *Windham,*[a] wherein Lord *Hardwick* said, that he took it, that "a man, actually indebted, and conveying voluntarily, always meant to defraud creditors."— The Chancellor, (*Kent,*) understands Lord *Hardwick,* by these expressions, to mean, that this was the conclusion of law, which was not to be gainsayed.— He quotes, with approbation, the further remarks of the latter, that he knew of no case, where a voluntary conveyance to a child, by a man indebted at the time, was not set aside, for the benefit of creditors;

[a] 2 Ves. 1.

but, that such conveyance, without any badge of fraud, and, by a person not indebted at the time, would be good, though he afterwards became indebted. That, though an unfortunate case may arise, in respect to children, for whom parents are bound, by nature to provide, it is impossible to say, the considetion in respect of them, is of so high a nature as that of paying just debts; and, therefore, the Court never preferred them to just creditors.

Chancellor *Kent* also sustains the doctrine of *Taylor* vs. *Jones.*[a] There, a settlement, after marriage, was made on the wife and children; and was held, under the statute of 13th Elizabeth, to be fraudulent, not only in respect to anterior, but, also, subsequent creditors—for the reason that the debtor continued in the possession of the property settled : and, the statute was held, to extend equally to the subsequent creditors, who were delayed or defrauded.

The master of the rolls further observed that, "it was not material, in that case, what the circumstances of the father were, at the time of the settlement, any further than as evidence, to show if he was in indigent circumstances, that it was made with an intent to commit a fraud."

He also remarked, in allusion to the sympathy, which is often appealed to, and excited, in cases of this kind, in favor of the objects of the conveyance, that he had "great compassion for wife and children; yet, on the other side, it is possible, if creditors should not have their debts, their wives and children may be reduced to want."

A case perhaps as favorable to voluntary settlements as any to be found of equal authority, (unless it be the one to which I first referred,) is that of

[a] 2 Atk. 600.

*Salmon* vs. *Bennett.*[a]  The question there presented, [a] Day's C. related to the validity of conveyance of land from Rep N. S. Sherwood to his son, in consideration of natural p. 525 affection only, and which land the son had conveyed to the defendant, with knowledge of the deed to the son. In the examination of the case, that court assumed the fact of an existing indebtedness by the father, at the time of the conveyance to the son, so that the question was, whether, notwithstanding the conveyances, the land was subject to the payment of Sherwood's debt. The judgment of the court sustained the conveyances. The Court held that there was a distinction in cases of voluntary conveyance between the children of the grantor and strangers; and that mere indebtedness at the time, will not, in all cases, render a voluntary conveyance, void, where it is a provision for a child; that an actual or express intent to defraud need not be proved, for this would be impracticable, in many cases where the conveyance ougnt not to be established, and the fraud may be collected from the circumstances of the case: that, if there be no fraudulent intent, and the grantor be in prosperous circumstances, unembarrassed and not considerably indebted, and the gift a reasonable provision for the child, leaving ample funds unencumbered for the payment of the grantor's debts, the voluntary conveyance to the child, will be valid against existing creditors. But, if the grantor be considerably indebted and embarrassed, and on the eve of bankruptcy; or if the gift bo unreasonable, disproportioned to his property, and leaving a scanty provision for his debts, the conveyance will be void, though there be no fraudulent intent.

Chancellor *Kent*, in reviewing this case, remarks, that the Court did not refer to authorities in support of their opinion, and, perhaps, they did not intend to fellow strictly, the decisions at *Westminster Hall*, under the statute of 13th Elizabeth—"That he had not been able to find the case in which a mere voluntary conveyance to a wife or child, has been plainly and directly held good against a creditor existing at the time."

The grounds on which the County Court rested their decision, appear to me to furnish a full illustration of the vexation and uncertainty which I have advanced against the principle recognised by that decision. They admit that a conveyance may be void without any fraudulent intent in the parties to it; of course, then, it must be so pronounced by way of instructions from the court to the jury, yet, the validity of the conveyance is to depend on the complication of facts enumerated in the opinion; the enquiry must be encountered on evidence adduced—what constitutes prosperous circumstances? what embarrassment? what considerable indebtedness? what a reasonable provision, proportioned to the grantor's property? and what a scanty provision for the payment of his debts? And, according to the principles of the decision, all other circumstances, which, in reason and justice would be entitled to equal weight in ascertaining the tendeney of the gift, must also be investigated. Under a practice of this kind, I think we might expect a different rule of right from each several trial, and that it would be impossible to establish any thing like certainty or uniformity of title, under voluntary conveyances. It would appear, however, from the facts of record in the cases before

us, that the plaintiff in execution might safely abide these tests. But the contrary doctrine which has been stated, appears more salutary and is best sustained by the number and weight of authority.

In *Burnet* vs. *Bedford Bank*,[a] the Court of that State held, in reference to a voluntary conveyance from a father to a son; that in such cases, where there is no fraud in fact, the deed is good against subsequent creditors, "and against all persons but such as were creditors at the time." <span style="float:right">[a] 11 Mass. R 421.</span>

Numerous other cases referred to and commented on by Chancellor *Kent*, in the case of *Read* vs. *Livingston*, appear to me to place the principle of the decision in that case, beyond a question.

In the case of *Sexton* vs. *Wheaton*,[a] the Supreme Court of the United States, in an opinion delivered by Chief Justice *Marshall*, sustains, substantially, the same doctrine. In that case Wheaton had executed a post nuptial voluntary settlement on his wife, of a house and lot: at the time of making the settlement he was not indebted, but, shortly afterwards engaged in trade, and failed; after which, Sexton, a subsequent creditor, filed his bill in Chancery to subject this property to the payment of his debt, on the ground that the conveyance was fraudulent, and therefore void as to creditors. The decision of the court was, that such settlement, made by a man who is not indebted at the time, upon his wife, is valid against subsequent creditors. That the statute of 13th Elizabeth, avoids all conveyances not made on consideration, deemed valuable in law, as against previous creditors. But that it does not apply to subsequent creditors, if the conveyance is not made with a fraudulent intent. <span style="float:right">[a] 8 Wheat. 229.</span>

· In the District of Columbia, where this trial was had, the statute of 13th Elizabeth was considered in force, and the conveyance in question subject to its influence; and which, as I have said, is but the same as our statute of frauds.

In the case referred to, the Chief Justice remarked, that, "in construeing this statute, the Courts have considered every conveyance, not made on consideration deemed valuable in law, as void against previous creditors;" that they fell within the proscriptive influence of the statute against deeds devised, &c. to the end, purpose, and intent, "to delay, hinder or defraud creditors;" but that, with respect to subsequent creditors, the application of the statute appeared to have admitted of some doubt.

He quotes with approbation the declaration of Lord *Hardwicke*, in *Walker* vs. *Burrows*,[a] made in reference to the English statute, "that it was necessary to prove that the person conveying was indebted at the time of making the settlement, or immediately afterwards, in order to avoid the deed."— After reviewing various other decisions, he observes, that, from these cases, it appears that the construction is completely settled, in England. We believe the same construction has been maintained in the United States. A voluntary settlement in favor of a wife and children, is not to be impeached by subsequent creditors, on the ground of its being voluntary."

The effect of this decision, then, as well as of others examined, is an explicit denial of validity to voluntary conveyances, as against previous creditors; and to leave them, in respect to subsequent creditors,

to depend on the intent and peculiar circumstances attending them.

The consequence is, that in the two cases, in which the Millers are claimants, the judgments of the Circuit Court must be affirmed.

In support of Huffman's claim, it is contended, that, though the conveyance from the father to the daughter might, while she remained sole, be deemed fraudulent and void; yet that, after the marriage, the husband was entitled to claim, as a purchaser.

It is also insisted, that there is, in law, no such distinction, as was recognised by the Circuit Judge's instructions to the jury, between gifts, made in contemplation of the particular marriage, and others, with out that inducement, but, for the general advancement of the daughter.

The counsel has cited authorities on these points, which render them, at least, plausible, and entitle them to deliberate consideration. But, before noticing the case mainly relied on, it is necessary to remark, that notwithstanding the subsequent marriage, the slave in question, does not appear ever to have gone into the use or possession of the son-in-law: that the contrary inference arises from the fact, as stated in the history of the cases, that this negro, as well as the others, was levied on, at the plantation of the defendant in execution, the same being then in his possession. Our understanding of the fact is, that the father continued in the use and possession of this, and all the other negroes conveyed to these claimants, to the time of the levy.

If we should infer that the father and his sons, (they being single, so far as we know,) lived togeth-

er, as part of the same family, so that the posses-
sion of one was equally the possession of the other—
the same reason or explanation does not apply to the
son-in-law. It, therefore, results, that so far as the
want of possession is material, in other cases, his ti-
tle is obnoxious to this objection.

But, in answer to this objection the counsel re-
fers to the case of *Hobbs* vs. *Bibb*,[a] as authority of
this Court, that want of possession does not, in any
case, founded on valuable consideration, render the
conveyance fraudulent and void.

It is proper to notice, that in the case referred to,
the conveyance was admitted to have been founded
on a valuable consideration, which existed or passed
at the time of its execution ; and that, though the
possession was not changed, as imported by the deed,
the failure was attempted to be accounted for, by
means of a contract of hire entered into between the
parties at the same time. The decision of the
Court was, that the possession of personal proper-
ty, remaining with the vendor, was presumptive evi-
dence of ownership in him ; but, that this presump-
tion might be rebutted, by proof : that such possession
was only presumptive evidence of fraud—not fraud,
*per se*.

There, the opinion was, that the want of posses-
sion, in case of absolute conveyance, was a presump-
tion of fraud. What proof would be sufficient to
rebut it, is left indefinite : whether evidence of a va-
luable consideration, alone, would be required, or
that, together with a hiring or something tantamount,
does not appear. If any thing more than the valua-
ble consideration be necessary, Huffman's claim, if

a2 Stew.54

so much be conceded to it, would be deficient in the balance.

But, the views of this Court, as entertained near the same time, but afterwards, were better defined, in the case of *Moore* vs. *Ayres*.[a]   There the same principle was involved, when, as well as in *Hobbs* vs. *Bibb*, the doctrine was investigated very fully, by the Court, on elaborate argument of counsel.

I decline entering into particular comments on the opinions delivered, in those two cases, deeming it sufficient to refer to them, for the reasons and authorities on which they rest.   In the case, of *Moore* vs. *Ayres*, my own views are expressed at length, in which I concurred with the then majority, in the result, under the peculiar circumstances of the case.

In this latter case, the decision was, that where the vendor remains in possession of personal property after a sale, it is not sufficient, as against creditors, that the consideration be *bona fide*, and the bill of sale recorded.   But, it must appear, that the sale was not made " to hinder or delay creditors;" and this is to be determined by the jury, from all the circumstances.

The opinion of the Court, in both the cases, was delivered by the then Chief Justice.   In the latter, he remarked, that "it never was contended, but possession remaining unbroken with the vendor, was, at least, a circumstance from which fraud must be inferred, if it was not explained."   This was said, in reference to a conveyance on valuable consideration.   Whether this declaration is entitled to the effect of varying or qualifying the principles of the decision in the former case of *Hobbs* vs. *Bibb*, may

[a] 2 Stewart, 386

be worthy of consideration. A consequence of it would appear to be, that if "possession does not accompany and follow the deed," in the true acceptation of these terms—that is, *if the possession be inconsistent with, and not subservient to the object of the conveyance*, the same must be found by the jury, under the instruction of the Court, fraudulent and void, unless the failure be satisfactorily explained; though there be no other objection to the conveyance.

We do not intend, on this occasion, to express, either our approbation of, or dissent from the decisions, made in the cases of *Hobbs* vs. *Bibb*, and of *Moore* vs. *Ayres;* yet, the remark is due, that the latter was influenced, in a great degree, by the former, and the former, by the case of *Bissell* vs. *Hopkins*,[a] by the Supreme Court of New York; and, that the Court of New York, in a still later case, *Stulson* vs. *Brown*,[b] departed from the principles of their earlier decision.

The last mentioned case involved the validity of an absolute bill of sale, for one half of a sloop, founded on a valuable consideration. The only objection urged against it was, that possession did not accompany and follow the deed. The Inferior Court had decided, that "the bill of sale was fraudulent, as to creditors in judgment of law, and refused to suffer the case to go to the jury." The Supreme Court affirmed the decision, on the same ground.

The authority mainly relied on to sustain *Huffman's* claim, is the case of *Sterry* vs. *Arden*.[c] In that case Arden and wife had executed a voluntary conveyance of real estate to their daughter, then sole. She afterwards married against his consent; in consequence of which he sold and delivered the same es-

a 2 Cow. 431

b 7 ib. 732.

c 1 John. Ch R. 261

tate for a valuable consideraiion, to Verplank, who, at the time had no actual notice of the former conveyance. Whether his information amounted to constructive notice was questionable; but the Chancellor considered it sufficient to have put him upon inquiry. It appeared that, at the date of the voluntary conveyance, Arden was free from debt, and that there was no intention to defraud any one; the circumstances satisfactorily showed this, and that the conveyance was intended purely for the advancement of the daughter. It was also evident that a main inducement for his afterwards selling to Verplank, was to defeat the expectations of his daughter and son-in-law; the property appearing to have been a strong inducement on his part for entering into the marriage.

It was ruled by the Chancellor, that a voluntary conveyance, intended as a settlement for a child of the grantor, was void as against a subsequent purchaser, for a valuable consideration, with only implied notice of the pre-existing deed, by the statute of frauds.— But he maintained that such deed might be rendered valid, by matter *ex post facto*, as by some valuable consideration intervening; and that the subsequent marriage in that case, which occurred prior to the second conveyance, was entitled to that effect, in as much as the husband was induced on that account to marry the daughter: that, under these circumstances, the first conveyance ceased to be voluntary, and became valid against the subsequent *bona fide* purchaser, for the valuable consideration. He also held that it made no difference whether the particular marriage was in contemplation at the time ef the voluntary conveyance or not.

The fact that the grantor was *not indebted* at the

time of the voluntary conveyance, was considered an important feature in that case.  In reference to the facts, the Chancellor said, it was "the case of a fair voluntary conveyance, made by a father to his daughter; he not appearing to be indebted at the time, and a subsequent sale made by him, with intent to defeat that settlement, but made for a valuable consideration, and to a purchaser chargable only with notice in law."  In applying the law, he observes, "It is the constant language of the books, and of the courts, that a voluntary deed is made good by a subsequent marriage, and a marriage has always been held to be the highest consideration in law."  Throughout the decision, however, the fact of Arden not being a *debtor at the time* of the voluntary conveyance, is kept steadily in view, as a leading consideration.

From this decree an appeal was taken to the Court of errors, where the same was unanimously affirmed.

In the latter Court, the case is entitled *Verplank* vs. *Sterry.*[a]  There, also, the circumstance that the grantor was not a debtor at the time, from which alone the legal inference of fraud in the voluntary conveyance could have arisen, had extensive influence on the decision.  *Spencer*, J., whose opinion is mainly relied upon in this case, after alluding to the facts, used this language, "How then can it be maintained, that if a father, in consideration of blood, make a *bona fide* settlement on his child, at a time when *he is not indebted*, this transaction shall be deemed void; and that it shall be taken for granted, contrary to the real truth and fact, that it was with intent to deceive such person as should afterwards purchase the estate, even with full notice of the *bona fide* conveyance?  As well might it be said that the set-

*12John. R 536

tlement on a child is void as to *future* creditors, as that it is void as to future purchasers. He considered it of but little importance whether the subsequent purchaser was chargeable with implied notice of the first conveyance or not. In other parts of his opinion, as well as in these quoted, he laid particular stress on the grantor's exemption from debt, at the time of the voluntary conveyance.

In this case the facts are considered essentially different from those in the case reviewed; so much so as to fall within the different principle of law. The circumstances of Miller, the grantor, having been considerably indebted at the time of this conveyance; of the property conveyed being personalty, and no delivery of it, or known cause to prevent its being done, or any explanation of the non-delivery; of the conveyance having been voluntary and absolutely void for twelve months after its execution as against this creditor—these facts present this as a case very different from the other. They subject it to the principle therein recognised for the protection of pre-existing creditors; under which Verplank was not permitted to occupy a more favorable position than that of subsequent creditors.

But another decision of the same Court, in which the decree referred to was rendered, sustains the latter principle even more explicitly. It is that of *Roberts* vs. *Anderson.*[a] There, the controversy arose between Roberts, a creditor, and Anderson, a purchaser, for a valuable consideration, or who professed to be such, under Sarah Johnson, the grantee of Griffith, the debtor; the conveyance from the latter to her being fraudulent.

[a] 3 John. Ch. R. 372.

The Chancellor explains the difference between the effect of the statute of 13th Elizabeth and 27th Elizabeth, both which, with the proviso alluded to, are consolidated into our statute of frauds, which I have already noticed so far only as relates to creditors, independent of the proviso. He remarks, that the latter statute was intended to protect *bona fide* purchasers, without consideration, or voluntary grantees; that this intention is equally fulfilled, whether the conveyance for a valuable consideration comes from the voluntary grantee or grantor. He says, if there be no creditors, the title of the grantee is good until there comes a *bona fide* purchaser, from the grantor, for a valuable consideration; until then, no person's rights are affected, but when that happens, the deed as to such purchaser is to be set aside. If, however, the voluntary grantee shall have sold in the mean time, to a *bona fide* purchaser, he is justly to be considered as standing in the grantor's place, and that what was done by such grantee, was done by his grantor, and such purchase will stand good. Under this statute, the first purchaser for a valuable consideration, whether he takes his conveyance from the voluntary grantor or his grantee, will have the preference; for the sole object of the statute was to protect such purchasers from voluntary conveyances; which, as to them, are fraudulent.

But, he continues, the statute of 13th Elizabeth, (which is, in effect, the same I have quoted from our statute of frauds,) was intended to protect creditors from fraudulent conveyances; and here a different rule of construction prevails. " The original deed, from a debtor, to a fraudulent grantee, is utterly void, as to creditors—and, as to them, the grantee can make

no conveyance, for he has no title as against them. The statute, in its enacting clause, operates on the deed from the fraudulent debtor; the proviso in the act applies to the original conveyance from the debtor, and saves it, when made to a *bona fide* purchaser, for a valuable consideration." Further, he says—"But though the debtor, himself, may, fraudulently, on his part, convey to a *bona fide* purchaser, for a valuable consideration, yet, his fraudulent grantee cannot—for, it is understood, that the proviso, in the 13th Elizabeth, does not extend to such subsequent conveyance. The policy of that act would be defeated by such extension. Its object was to secure creditors from being defrauded by the debtor; and, the danger was, not that he would honestly sell for a fair price, but, that he would fraudulently convey, upon a secret trust between him and the grantee, at the expense of the creditors.

If the debtor sells, himself, in a case, where the creditor has no lien, and sells for a valuable consideration, he acquires means to discharge his debt, and it may be presumed he will so apply them. If his fraudulent grantee be allowed to sell, the grantor can not call those proceeds out of his hands; and, the grantee can either appropriate them to his own use, or to the secret trust upon which the fraudulent conveyance was made.

There is more danger of abuse, and that the object of the statute would be defeated, in the one case, than in the other. The fraudulent grantee has no title, as against the creditors: the deed, as to them, is utterly void; and the subsequent conveyance from him would, as against creditors, have no foundation.

3 v. P.          28

As a further, and decisive objection to Anderson's title, in the case mentioned, the Chancellor rested on the fact, that Sarah Johnson, the voluntary grantee, never was in possession, as owner, under the fraudulent deed. That, as there were no false lights held out to deceive the world, the case was not within the reason and policy of any rule, calculated to protect a *bona fide* purchaser. That the purchaser, under the voluntary grantee, was presumed to know the fact, that she was not in possession, as it existed before his eyes; and, it was sufficient to put him upon inquiry, as to her pretended title. That he was not entitled to be considered as a *bona fide* purchaser, for a valuable consideration, without notice—he had notice, that there was no possession accompanying the deed, and he paid only a nominal consideration.

The foregoing views are believed to furnish a sound exposition of the principles of law, which are alike applicable to the case under consideration, and to shew, that the objections to the validity of Huffman's title, as previously stated, are insuperable.

We are unanimous in this opinion. The judgments in all the cases must be affirmed.