ABRAM W. PAUL *vs*. ROBERT J. WILES & others.

October Term, 1873.

PARTIES TO A BILL IMPEACHING A DECREE FOR FRAUD.—All parties to the original suit whose rights may be affected by the relief sought are necessary parties to a bill filed to set aside a decretal order as procured by the fraud of one particular defendant, or altered by him after the adjournment of the court, and it is no sufficient cause of demurrer to the whole bill by any of these defendants that they are not directly charged with the fraud, or connected with the unauthorized alteration, especially if the bill allege that these defendants knew by whom and when the alterations were made.

*A. McClain*, for complainant.
*Guild & Dodd*, for defendants.

On demurrer.

THE CHANCELLOR :—The bill alleges that about the —— day of February, 1864, complainant filed his original bill

against the said Robert J. Wiles, H. S. French and George H. Reed (the last of whom has since died insolvent and defendant, Caroline V. Reed, been appointed his administratrix), and attached 24 bales of cotton which were replevied by said defendants, the defendants, J. C. French and J. C. McCrary, being sureties in the replevy bond. That afterwards complainant filed his amended bill against all of the said parties, and attached five thousand dollars belonging to said Wiles in the hands of the said J. C. French and J. C. McCrary, then bankers in Nashville, to satisfy complainant's debt against said Wiles. That afterwards, while said suits were pending, though perhaps consolidated to be tried as one case, and on the 22d of May, 1865, an order or decree was entered in said cause " by consent of parties " directing the said J. C. French and J. C. McCrary to pay said $5,000 into the hands of the clerk and master, and directing him to loan said money until the next term of the court, giving the said Wiles the preference in borrowing the money, upon note with approved security, "and said decree further declares, by the interlineations and alterations therein, that when said money should be paid to the clerk and master the said J. C. French and the said J. C. McCrary shall be discharged from all liability upon the said delivery bond." The complainant then charges upon information received from his then solicitor, and belief, that said decree "was fraudulently obtained," in this, that his said solicitor never assented to it, nor did complainant, who then lived in Ohio, and was not at the time of the entry of the decree in the state of Tennessee, give his assent thereto either before or since the entry; nor did he have any knowledge of it until about the —— day of October, 1869, when he was told that there had been a decree ordering said money paid to the clerk and master and loaned out, but he never did see the decree or know of the conditions in it until within the last 30 days. The bill further charges, upon information and belief, that the decree as originally entered on the minutes of the court on the 22d of May, 1865, simply ordered the said J. C. French and

J. C. McCrary to pay said $5,000 into the hands of the clerk and master, and that he loan said money out until the next term of the court, taking note with approved security, and giving Wiles a preference as borrower, "and that said interlineations, erasures, and alterations in said decree now apparent were not in it when the record was signed by the court." That the court adjourned on the 26th of May, 1865, until the next term in course, and that after the adjournment and signature of the minutes by the Chancellor, viz, about the 12th or 13th of June, 1865, the said decree was altered, changed, and interlined so as to make it read that when said $5,000 should be paid into court, or to the clerk and master, then the said J. C. French and J. C. McCrary should be discharged from all liability in said replevy bond for said 24 bales of cotton and said $5,000. That the decree was changed without any legal authority, and in violation of complainant's rights.

The bill further alleges that said money was loaned to Wiles by the clerk and master, who took his note with sureties thereto "who were not good." That afterwards complainant's cause was tried, and, on the —— day of February, 1867, a decree was rendered in his favor for $4,868.98 and costs, and on the —— day of February, 1867, a decree was entered upon the note in favor of the clerk and master against Wiles and his sureties for $5,505.80, upon which execution has been issued and returned "*nulla bona.*" That the said decree was procured by fraud of the said Wiles, and it may be others acting in collusion with him, and that the defendants, or some one or more of them, knew who made the alterations and interlineations, who dictated them, and when the same were done, etc. The bill calls for a discovery, and asks that the decree be set aside for fraud, and, if not wholly fraudulent, that the interlineations and changes made after the adjournment of court, be declared void, and for other relief.

The demurrer is filed by all the defendants except Wiles. The causes of demurrer assigned do not any of them go to

the gravamen of the bill, which is the fraudulent or void character of the order purporting to be by consent of the 22d of May, 1865, except the sixth cause, and need not, therefore, be noticed. The sixth assignment is in these words : "The object of the bill is either to set aside the decree, or the alleged alterations, because the alterations were fraudulently incorporated, but it does not charge that these defendants were connected with the alterations, or were guilty of fraud, nor does it charge specifically who were guilty of the alleged fraud, so as to enable the court to give relief against any person."

The bill does not expressly charge that the demurrants were connected with the alterations, or guilty of the fraud, but it does charge that the decree was procured by the fraud of Wiles, "and it may be others acting in collusion with him," and that the defendants know who dictated, or made the alterations, and the time when they were made. This allegation, of course, entitles the complainant to a discovery from them, even if he be not entitled to relief. *Cato* v. *Easley*, 2 Stewart, 214. As the demurrer goes to the discovery, as well as the relief, it is clearly too broad, and, being bad in part, must be overruled.

Besides, nothing is clearer than that a party may come into this court to have a decree declared void for fraud, and for this purpose all parties to the original suit, whose rights may at all be affected by the relief sought should be made defendants. If it turns out that the decree purporting to be by consent, was not in fact assented to by the complainant, the decree was, of course, fraudulent and void as to him, whether the demurrants had any participation in, or knowledge of the fact, or not. For, being parties to the suit, it it was their duty to see that the orders and decrees entered were made by proper authority. *Lindsley* v. *Thompson*, cited, *ante*, 199, 200. So, if the interlineations and changes in the decree or order were made after the court had actually adjourned, and the minutes had been signed, they would be void as acts of the court, although the demurrants may have

had no hand in them. Whether they would be good notwithstanding these facts, if assented to by the complainant, we need not stop to inquire; for the bill denies such assent, and the denial is admitted by the demurrer.

The demurrer must be overruled, with leave to the defendants to answer within twenty days, so as not to delay the hearing.