## HUGGINS *vs.* PERRINE.

[BILL IN EQUITY BY CREDITOR TO SET ASIDE VOLUNTARY CONVEYANCE BY DEBTOR.]

1. *Valedity of voluntary conveyance as against subsequent creditors.*—A gift, or other voluntary conveyance, by an insolvent debtor, to or for his children, with intent to hinder, delay and defraud his creditors, may be avoided by a subsequent creditor.

APPEAL from the Chancery Court of Mobile.
Heard before the Hon. WADE KEYES.

THIS bill was filed by James Perrine, against the heirs-at-law and personal representative of George Huggins, deceased, late sheriff of Mobile county, to subject to the satisfaction of certain judgments, some of which had been paid by complainant as surety of said Huggins, and others of which had been transferred and assigned to him, certain lands in Mobile county, which are alleged to have belonged to said Huggins in his lifetime, though the legal title was then held by one White, and which, since the deaths of said Huggins and White, have been conveyed by the heirs of White to the children of said Huggins. These lands, the bill alleged, were sold at execution sale by said Huggins, as sheriff, and were bid off by said White, as agent or trustee of said Huggins and others, who were jointly interested in them. White afterwards conveyed to the other parties their respective interests in the lands; but Huggins being insolvent at the time of the purchase, and having judgments then outstanding against him, his interest was retained by White, and no conveyance was made between them; and this arrangement was alleged to have been intended to hinder, delay and defraud the creditors of Huggins. The judgments owned by complainant, as well as those paid by him as surety of said Huggins, were rendered after said purchase, and were founded on debts contracted after that time. The estate of Huggins was regularly declared insolvent, and complainant's judg-

ments were filed as claims against it within the time prescribed by law.

The answers admitted the payment by said Huggins of a portion of the purchase-money for said land; but they insisted that this was intended by him, and was so understood and agreed between him and White, as a gift or advancement to his children; and that he never claimed any interest whatever in said lands for himself.

On final hearing, on bill, answers, and proof, the chancellor rendered a decree for the complainant; which is now assigned as error.

E. S. DARGAN, for appellant.—At the time the lands were bid off by White, at the sheriff's sale, in trust for Huggins and others, Huggins declared that his interest was intended for his children, and such was the understanding with White and all concerned. White endorsed on his deed from the sheriff, that Huggins' interest was intended for the benefit of his children; and, after his death, his heirs conveyed it to the children of Huggins. Huggins always recognized the property as belonging to his children. If the complainant, who was not a creditor of Huggins at the time of this transaction, can, under these circumstances, subject these lands to the satisfaction of his subsequent debts, merely because Huggins was then indebted to other persons, it must be upon the principles of the common law, or the rules which govern courts of equity; for, there being no conveyance from Huggins, the statute of frauds has no application to the case.—Clarke v. White, 12 Peters, 178–98; Sugden on Vendors, vol. 2, top p. 170. Although the transaction was fraudulent as to the existing creditors of Huggins, it cannot be impeached by his subsequent creditors, because there was no existing intent to defraud them.—Upton v. Vail, 6 Johns. Ch. 180; 1 Story's Equity, §§ 360, 361; Clarke v. White, *supra.*

JNO. T. TAYLOR, *contra.*—At common law, before the statute of frauds, a deed or conveyance, fraudulent in fact, was void only against existing creditors. Since the stat-

ute, a conveyance made colorably, with actual intent to defraud, may be avoided by subsequent creditors. An intent to defraud may be legally inferred from the fact of the grantor's insolvency, or from his being so largely indebted that his conveyance has the necessary effect of hindering or defrauding his creditors. Indebtedness alone raises the presumption of fraud, which becomes conclusive in law by proof of insolvency, and can only be repelled by proof that the existing debts have all been paid, or that they were secured by mortgage on other property. American Leading Cases, vol. 1, pp. 55–57; 3 Wendell, 411; 19 Pick. 231–37; 6 N. H. 67; 12 N. H. 397–403; 4 Yerger, 164; 6 Humph. 218; 3 Dev. 12; 2 Bibb, 204; 2 B. Monroe, 347; 1 Rob. Va. 125; 1 Peters' C. C. 460; 4 Washington, 129; 3 Johns. 481, 497, 501; 12 Serg. & R. 448; 4 Greenleaf, 105, 208; 1 McCord's Ch. 518; 1 Bailey's Eq. 138; 4 Dess. 227, 232; 3 Humph. 118; 3 Dev. 82; 1 Dana, 531, 433; 8 Metcalf, 411, 419; 11 Wendell, 241; 3 Paige, 557.

STONE, J.—In the great case of Reade v. Livingston, 3 Johns. Ch. 481, Chancellor Kent, with his accustomed research and ability, reviewed and collated the numerous decisions bearing on the question presented by this record; and, after asserting the doctrine, that a voluntary settlement or conveyance, made by one indebted at the time, was fraudulent and void as against such debts, irrespective of their amount or the value of the property conveyed, he proceeded further to declare, that subsequent creditors might impeach such settlement or conveyance, on the ground of prior indebtedness; and that such conveyance or settlement would be declared fraudulent and void as against the latter class of creditors, if the antecedent debts were sufficient in amount to afford reasonable evidence of a fraudulent intent: that to justify this conclusion, it was not necessary to show the absolute insolvency of the settler.

In our own courts, this question has been frequently considered. In Miller v. Thompson, 3 Porter, 196, the case of Reade v. Livingston, *supra*, was quoted approv-

ingly, and the general principle asserted, that voluntary conveyances by persons indebted are absolutely void as to such debts. See, also, Moore v. Spence, 6 Ala. 506. In Elliott v. Horn, 10 Ala. 348, it was decided, that a purchase of land by a father, in the name of his son, for the purpose of defrauding his creditors, was void, as well against subsequent purchasers as antecedent creditors. The principles of these two cases were re-affirmed in Thomas v. DeGraffenreid, 17 Ala. 611; Foote v. Cobb, 18 Ala. 585; Gannard v. Eslava, 20 Ala. 732; Lightfoot v. Stiles, 26 Ala. 443.

In Corprew v. Arthur, 15 Ala. 525, this court pretty clearly indicated a disinclination to go the extreme length of the English decisions, in construing the statutes against fraudulent conveyances; and while it is conceded that an intention to defraud will vitiate a conveyance, even at the instance of a subsequent purchaser, it is said that a conveyance purely voluntary will be upheld against one who subsequently purchases with notice.—See Lightfoot v. Stiles, *supra;* Fisk v. Stubbs, and Spencer v. Godwin, at the present term.

This subject is very fully considered in American Leading Cases, vol. 1, pp. 49 to 85. On pages 71–2, it is said, that a voluntary conveyance is not void against subsequent creditors, unless it be actually fraudulent; that a colorable conveyance, accompanied by the presumption of a secret trust for the benefit of him whose debts are sought to be enforced, is void, whether the debts be precedent or subsequent; and that such voluntary conveyance is always fraudulent against those subsequent creditors, whose injury is actually contemplated. It is further said, and well sustained by authority, that "an intent actually to defraud creditors is to be legally inferred from the grantor's being insolvent at the time, or greatly embarrassed, or so largely indebted that his conveyance necessarily has the effect to hinder and defraud creditors; and a voluntary conveyance, made under such circumstances, may be set aside by a subsequent creditor." Reade v. Livingston, *supra;* Hutchison v. Kelly, 1 Rob. Va. 125.

It is contended for appellant, that the present is only a case of advancement by Mr. Huggins to his children; and that as there was no conveyance in fact made by him, it is not within the statute of frauds. Mr. White, in this entire transaction, acted as the agent and friend of Mr. Huggins. He did not purchase for himself, or with his own money. Stripping this case of all machinery, Mr. Huggins, at his own sale, bought a one-fourth interest in the land, and paid for it with his own means. He subsequently declared that he intended this property for his children; and the endorsement by White on Huggins' deed to him, as proved by complainant's witness, shows that White *had made a deed to the children.* This is nothing more nor less than a gift by Huggins to his children; and as our statute embraces "every gift, grant or conveyance, * * * by writing or otherwise, * * * * to the intent or purpose to delay, hinder or defraud creditors," we think the case is clearly within the statute.—Clay's Digest, 254, § 2.

We have thus far considered this case upon the legal presumptions. The testimony certainly fails to make a case favorable to the interests of the appellants. At the time of the purchase, Mr. Huggins was ruinously insolvent. He purchased not only the property in controversy, but other real estate; and invariably took the title in the name of his friend White. Long after the purchase of this property, he leased it in his own name for ten years, exercising unlimited control over the premises. His children were all minors,—not of the ages when children are usually advanced. These circumstances force us to conclude, that Mr. Huggins' object was to delay, hinder and defraud his creditors; and under the authorities cited in the briefs of counsel, as well as those above, a subsequent creditor may set aside a conveyance thus made.

We have disposed of the only point made in argument for the appellant. The equity of the bill is supported by the case of Watts v. Gayle & Bower, 20 Ala. 817.

The decree of the chancellor is affirmed.