# Kirksey *v.* Snedecor.

*Bill in Equity by Creditor, to set aside Conveyances as Fraud-
ulent.*

1.  *Voluntary and fraudulent conveyances.*—The settled law in this State is,
    that a voluntary conveyance, or a conveyance on consideration not deemed
    valuable in law, is inoperative against existing creditors, and voidable at their
    instance, without regard to the intent with which it was made, or the present
    ability of the grantor to pay his debts ; but subsequent creditors can not avoid
    it, without proof of actual or intentional fraud, nor can they be allowed to
    participate in the proceeds, when it is set aside at the instance of existing
    creditors, without proof of actual or intentional fraud.

APPEAL from the Chancery Court of Sumter.

Heard before the Hon. A. W. DILLARD.

These were three cases, which were submitted, argued,
and decided together.   Each of the bills was filed on the 9th
February, 1874, by Foster M. Kirksey, as a creditor of the
estate of J. J. Little, deceased, on behalf of himself and such
other creditors as might come in, make themselves parties,
and contribute to the expenses of the suit, against the ad-
ministrators, widow, and children of said Little ; and sought
to set aside several conveyances, hereinafter more particu-
larly described, on the ground that they were voluntary and
fraudulent, and to subject the lands to the satisfaction of
the debts due to the complainant and other creditors.   Said
J. J. Little died on the 22d February, 1872, and his estate
was regularly declared insolvent by the Probate Court of
Sumter, in which county he lived and died.   At the time of
his death, he was indebted to the late firm of Kirksey & Car-
penter, commission-merchants in Mobile, in the sum of
$12,670.37 ; and on the dissolution of said firm, the debt
became the property of said F. M. Kirksey, the complainant,
who, on the 13th October, 1873, after the said declaration of
insolvency, obtained a judgment against the estate of said
Little for $14,023.30.   The conveyances which the bills sought
to set aside, five in number, were as follows : 1st, a convey-
ance by James M. Hibler and wife, of a tract of land con-
taining about four hundred acres, which was dated the 2d
September, 1867, recited the payment of $6,400 as its con-
sideration, and conveyed the lands to Mrs. Sallie A. Little,
the wife of said J. J. Little, during the life of her said hus-
band, and at his death to his heirs; 2d, a conveyance by Mary

[Kirksey v. Snedecor.]

Beatty, of the house and lot in which said Little resided at the time of his death, which is nowhere set out in the record, but which is said to have been executed on or about the 15th February, 1868, and to have conveyed the property directly to said Little's wife ; 3d, a conveyance by Turner Reavis and wife, of a tract of land containing forty acres, which was dated the 9th April, 1868, recited the payment of $470 in gold as its consideration, and conveyed the lands to Mrs. Sallie A. Little for life, then to her said husband for life, if he survived her, and on his death, or her death if she survived him, to the persons who would be his heirs at the time of his death ; 4th, a conveyance by the administrator of the estate of Nelson A. Rogers, deceased, of several lots on the river front in or near the town of Warsaw, which was dated the 19th December, 1870, recited that the sale was made, under a decree of the Probate Court, on the 11th April, 1870, and that Mrs. Sallie A. Little had become the purchaser, at the price of $900, which had been paid, and conveyed the lands directly to her; and, 5th, a. conveyance by Turner Reavis and wife, of a tract of land containing about eighty-eight acres, which was dated the 28th September, 1871, recited the payment of $880 as its consideration, and conveyed the land to Mrs. Sallie A. Little for life, and at her death to such child or children, born of her marriage with her said husband, as might then be living. The bill alleged that all of these conveyances were voluntary—that the purchase-money was in fact paid by said J. J. Little ; that he was largely indebted at the time, and that the conveyances were made to his wife and children with the intent to hinder, delay, and defraud his creditors, and to place the property beyond their reach. Answers were filed by the defendants in each case, denying that the conveyances were either fraudulent or voluntary. The testimony was the same in all the cases. The material facts are stated in the opinion of the court, and in the briefs of counsel ; and a further statement is not deemed necessary. On final hearing, on pleadings and proof, the chancellor dismissed the bill in each case ; and his decrees are now assigned as error, with several rulings on questions of evidence, which, under the agreement of counsel, require no special notice.

SMITH & COBBS, with whom was THOS. W. COLEMAN, for appellants.—The prominent fact disclosed by all these conveyances, except one, is, that the enjoyment of the estate by the husband and wife, during their lives, is carefully guarded, with remainder to their children (or heirs), while the property is put beyond the reach of the husband's creditors at

(13)

law.   In one of them, the benefit of a life-estate is expressly reserved to him, if he should survive his wife ; in all of them, a statutory separate estate is created in the wife, of which the husband has the control, management, and enjoyment; and the ultimate remainder, in all of them, is to his heirs. If the purchase-money was paid by J. J. Little, the deeds are clearly voluntary, and hence void as to existing creditors, whether there was any fraudulent intent or not.   If they were made with a fraudulent intent, they are also void as to subsequent creditors.   It is not necessary that a fraudulent intent as to any particular subsequent creditor should be shown :  a general fraudulent intent when the deeds were made will avoid them.   As to subsequent creditors, fraud is inferred from a succession of similar voluntary conveyances, disproportionate to the grantor's ability; from the fact that he had to borrow the money to buy the lands so given and conveyed ; and from his insolvency, or indebtedness to such an extent that the conveyances will have the necessary effect to hinder, delay, and defraud his creditors.—*Huggins v. Perrine*, 30 Ala. 398 ; *Williams v. Avery*, 38 Ala. 115 ; *Read v. Livingston*, 3 John. Ch. 481. When the grantor, or giver, subsequently obtains credit on the pretense that the property is his own, it is no longer a case of presumptive fraud merely, but positive proof of an original fraudulent intent ; for the use made of the conveyances shows the intent with which they were made.— *Constantine v. Twelves*, 29 Ala.  Whether voluntary conveyances from a father to his children are void as to subsequent creditors, depends on the intention with which they were made, to be gathered from all the circumstances of the case.—3 Porter, 198 ; 31 Ala. 186 ; 8 Conn. 186; 54 Maine, 476 ; 8 N. H. 44 ; 1 Md. Ch. 507 ; 21 Miss. 631 ; 28 Miss. 717 ; 17 Geo. 217 ; 34 Illinois, 382 ; 11 Missouri, 540; 6 U. S. Digest, 1st series, pp. 674–6, §§ 23, 75 ; 4 Dana, 251. A voluntary conveyance, made in contemplation of future indebtedness, is voidable at the instance of subsequent creditors.—1 Graves, Pa. Cas. 74.  A deed, fraudulent as to existing creditors, is, as a general rule, fraudulent also as to subsequent creditors.—6 Mich. 456 ; 21 Miss. 348 ; 12 N. H. 396 ;. 16 N. H. 464 ; 17 N. H. 417 ; 3 Wendell, 411 ; 6 Humph. 216 ; 11.Paige, 589 ; 23 Maine, 221.

The Hibler lands were bought before the war, though not conveyed until September 2, 1867 ; and the purchase-money was paid by J. J. Little.   At that time, suits were pending against him, and debts are proved aggregating $4,343, besides others not definitely known.   Many of these debts are still due, and none have ever been paid in full.   Ross was induced, by a false representation of Little's bankruptcy, to

take $300 in full payment of his debt; and Kirksey was in-
duced by fraud to become Little's creditor for the debt to
Ross, $300, and the debts to Pierson and Woods, in all
$2,991.24, which are still due to him. On 9th April, 1868,
when the first purchase was made from Reavis, there were
debts due and unpaid, which swelled the total amount to
$8,319.24, besides others not specifically proved; and none
of these debts appear to have been paid, except that due to
Hargrove, which complainant was induced to pay; and he
is still Little's creditor for that debt, besides the others
above named, amounting in all to $4.469.24. The purchase-
money for this land was paid by J. J. Little, who borrowed
it for that purpose. The same condition of things existed
at the date of the purchase from Mary Beatty. In Decem-
ber, 1870, the time of the purchase from the estate of Rogers,
the indebtedness had increased to more than $12,000, and
still continued to increase up to September 23, 1871, the date
of the last purchase from Reavis; and of this large indebt-
edness, which has never been paid, the greater part is due to
Kirksey. In all the cases, the purchase-money is shown to
have been paid by J. J. Little, and the title taken in the
names of his wife and children. As proving a general fraud-
ulent intention in all these transactions, the complainants
rely on the fact of large indebtedness, amounting to insol-
vency, and ever increasing; the manner in which, in each
successive instance, the property was conveyed; the specific
acts of fraud proved, by the representation of bankruptcy to
Ross, and the exhibition of the tax assessment to Kirksey;
and the fact that all the old debts were taken up, as far as
possible, by the creation of new debts subsequent to the
conveyances. As to these old debts, assumed by Kirksey,
or Kirksey & Carpenter, and still due to the complainant, he
is entitled to stand in the position of those prior creditors,
and to be substituted to their rights.—Kerr on Fraud, 102,
note; *Brown v. McDonald*, 1 Hill's Ch. 297; *Savage v. Mur-
phy*, 34 N. Y. 508.

The defendants attempted to prove a separate estate in
Mrs. Little. Of her distributive share of her father's estate,
amounting to $800, or $1,000, it is shown that $800 was paid
by Little to the complainant. Of the sum said to have been
given to her by her husband soon after the surrender, which
the witness supposed was about $6,000, but which he did not
count, no satisfactory account is given. If this money was
loaned out, or on deposit, it would have been easy to prove
the fact; and it was incumbent on the defendants to make
the proof, in explanation and rebuttal of the suspicious cir-
cumstances. If the money was on deposit, or hoarded, there

[Kirksey v. Snedecor·]

could have been no inducement to pay the purchase-money to Hibler in installments, as is proved to have been done; nor could there have been any necessity for borrowing money to pay for these lands. The peculiar limitations contained in the different conveyances repel the idea that the purchases were made with money belonging to Mrs. Little's statutory separate estate. If the money was hers, the title ought to have been made directly and absolutely to her; and there is no law authorizing such limitations and conditions on her estate, materially changing its character. The limitations are perfectly consistent with the supposition of a gift from the husband, and an attempt on his part to reserve some benefit to himself; and they are not reconcilable with any other hypothesis. The proof shows how most of the purchase-money for the lands was procured by Little; and if Mrs. Little had $6,000 at that time, whether loaned out, on deposit, or hoarded, there was the less necessity or propriety in her husband's making such provisions for her; and the fact raises a greater presumption against the validity of the conveyances.

SNEDECOR & COCKRELL, with THOS. B. WETMORE, contra.— The bills are not framed on the theory of tracing the debtor's funds, liable to the complainant's demand, into specific property, and subjecting it to the satisfaction of the debt. They proceed against the property conveyed, on the ground that the conveyances are voluntary, and the further ground that they are fraudulent. The defendants deny that the deeds are either fraudulent or voluntary; and they insist that, if voluntary, the complainant cannot set them aside on that ground. It is shown that Mrs. Little received about $1,000 from her father's estate, $800 of which sum was deposited by her husband with Kirksey & Carpenter; and it is an undisputed fact that, soon after the close of the war, she received a gift of at least $6,000 from her husband, who was not at that time indebted to any body. These two amounts nearly equal the purchase-money paid for all the lands. Whether this identical money was paid for the lands, or was otherwise used by Little, is an immaterial inquiry: in either case, the conveyances are supported by a valid consideration.—Coleman v. Smith, at the last term. If the conveyances were wholly voluntary, they could only be set aside by existing creditors.—Leonard v. Forcheimer, 49 Ala. 145; Marshall v. Croom, 52 Ala. 554; Crawford v. Kirksey, at the last term. The first item in the plaintiff's account is a charge of $1,000, under date of April 11, 1868; and the next, a credit of $900, dated April 25, 1868; and on the 20th April,

1869, when the last part of his crop of 1868 was sold, the balance against Little was merely nominal—only $16.51. These dates are subsequent to the execution of three of the conveyances. As to these deeds, the question of their validity as voluntary conveyances is out of the case : they can only be set aside on the ground of actual fraud, or fraudulent intent.—Cases cited *supra ;* also, *Loeschigh v. Hatfield,* 5 Robertson's (N. Y.) Rep. 26. If the deeds are not voluntary, proof of a fraudulent intent on the part of the debtor alone is not sufficient to invalidate them—there must be fraud in which the grantees participated; and of this there is no proof whatever. Nor does the evidence justify the inference of intentional fraud on the part of the debtor. The whole charge of fraud, in this connection, is based upon his supposed insolvency, or embarrassed condition, which is not supported by the evidence. All his business seems to have been transacted through Kirksey & Carpenter, and his credit with them seems to have been good. He was ruined, the witnesses say, by the purchase of the "Washington place," and the depreciation of values; and his insolvent estate, not yet settled, has already paid forty cents on the dollar.

STONE, J.—These three cases present, substantially, the same questions, and we will consider them together. The bills are in the form of creditors' bills, filed by the complainant, Kirksey, in behalf of himself and all other creditors of the estate of J. J. Little, who will make themselves parties, and contribute to the expense of the suit. No other creditors have come in, and Kirksey remains sole complainant. The *gravamen* of the bills is, that Little, the intestate, in his lifetime, being largely indebted to complainant and others, purchased several tracts of land, described in the bills, paid for them with his own money, and had the titles made to Sarah A. Little, his wife, without valuable consideration moving from her, and with intent to delay, hinder, and defraud his creditors.

Fraud that will vitiate a conveyance, and expose the property conveyed to the debts of the grantor, or of the person who pays the purchase-money, is of several classes. A conveyance of property on a consideration simply good, and not valuable, is voidable and inoperative against any debt the grantor may then owe ; and this, without any reference to the innocence of the motive, or the present ability of the grantor to pay his debts from other sources.—*Miller v. Thompson,* 3 Por. 196 ; *Moore v. Spence,* 6 Ala. 506 ; *Stokes v. Jones,* 18 Ala. 734; 2 Brick. Dig. 21, § 100. A conveyance by gift, or on other consideration not deemed valuable in the law, is

not, for that cause alone, rendered invalid as to subsequent creditors; and hence, while such conveyance will be set aside as to antecedent debts, it will be upheld as to subsequent debts. We have never followed the doctrine, that a conveyance, made without intentional fraud, by one indebted at the time, can be, on that ground, set aside by a subsequent creditor; or, if set aside by a prior creditor, let in a subsequent creditor to share in the proceeds. To do so, would be to obliterate the distinction between actual, or intentional fraud, and constructive fraud.—See *Corprew v. Arthur*, 15 Ala. 525; *Stiles v. Lightfoot*, 26 Ala. 443; *Spencer v. Godwin*, 30 Ala. 355; *Huggins v. Perrine*, 30 Ala. 396; *Gardner v. Booth*, 31 Ala. 186; *Cole v. Varner, Ib.* 244: *Pinkston v. McLemore, Ib.* 308. But conveyances made in *actual* fraud—with intent to delay, hinder, or defraud creditors—may be avoided by any creditor or purchaser, subsequent as well as antecedent.— *Williams v. Avery*, 38 Ala. 115; *Huggins v. Perrine, supra.* In *Crawford v. Kirksey*, at December term, 1876, we drew some distinctions between sales made by a failing or insolvent debtor in payment of a *bona fide* debt, and such sales when made upon a new consideration, presently paid. We need not repeat what we then said, as we do not consider that question directly presented by these records.—See *Hubbard v. Allen*, at this term.

Five deeds are brought to view in the present suits, and they are all assailed on two grounds: first, that the consideration in each case moved from J. J. Little, the intestate, and not from Sarah A. Little; and, second, that each and every one of the deeds was procured to be made to Mrs. Little, with intent to delay, hinder, and defraud the creditors of J. J. Little. The first and most important deed was made by Hibler and wife, and bears date September 2d, 1867. This deed, after being duly acknowledged and certified, was recorded in the probate office of the county, January 10th, 1868. The consideration of this sale was $6,400, and the record is silent as to when it was paid. We infer it was paid before the deed was executed. The second deed averred to have been made, it is charged, bears date February 15, 1868, and was executed by Mary Beatty. This deed is not in the record, and it is neither averred nor proved when the consideration was paid, the amount of it, or value of the lot purchased. We infer this was paid for at or before the execution of the deed. We know not whether this deed was recorded. The third was executed by Reavis and wife—their first sale—and bears date April 9th, 1868; consideration, $470 in gold, paid down at the purchase. This deed was not received for record, until October 4th, 1871. The

bills charge that, when these deeds were executed, J. J. Little was largely indebted to complainant and others. The account and dealings between Little and Kirksey & Carpenter—now Kirksey—is made part of the testimony. It shows that the first item of indebtedness from the former to the latter was April 11th, 1868, "cash paid Stone & Matthews, $1,000." On the 25th of the same month, $900 of this was returned, or refunded. The next debit is May 6th, $150; set off by a collection by Kirksey & Carpenter, for Little, of the same amount, two days before. On the 23d April, 1869, the account was made out and balanced between the parties, and the balance then against Little was only $581.42, five hundred dollars of which was for an advance made that day. It is thus shown that, at the purchase of the three parcels of land above referred to, Little was not at all indebted to Kirksey & Carpenter; and so, as to these tracts, the relief claimed on the ground stated above must fail.

The other two conveyances, however, stand on a different footing. The deed of Thompson, administrator of Rogers, was executed December 19th, 1870; and the second deed from Reavis and wife bears date September 28th, 1871. There are circumstances tending to show that these purchases were probably made at an earlier date than these deeds show. But no reliable evidence is given, showing when the purchases were made, or the money paid. Hence we can not, with safety, assign to these transactions dates different from those shown in the deeds. Kirksey & Carpenter were large creditors of Little when each of these transactions was had, and their debt has never been paid. In January, 1870, the balance was over $7,000. In April following, it was near $5,000; and it steadily grew from that time until Little's death, in February, 1872. These purchases fall under the principle of conveyances made by or through a person who is indebted at the time, and cast on the grantee the necessity of proving a valuable consideration. The $1,000 alleged to have been received from Mrs. Rogers, the distributive share of Mrs. Little in her father's estate, is the only item we deem it necessary to consider in this connection. Of that sum, Little received $800 in draft of Mrs. Rogers, which went to complainant in this suit, March 4, 1869; immediately after it was drawn. When the remaining $200 was received is not shown. Little paid Thompson, administrator of Rogers, the purchase-money for the property bought of him, by obtaining a loan from Chas. Hopkins & Co., October 18th, 1870. He paid Reavis, for the purchase from him, through Kirksey & Carpenter, in January, 1869, and in January, 1871. There is no testimony sufficiently

explicit to connect either of these purchases with the $1,000—
Mrs. Little's distribution-money—and this line of the defense
must fail.—See *Hubbard v. Allen,* at the present term; and
*Hamilton v. Blackwell,* at present term.

The only remaining question we need discuss, is the charge
in the bills that the several deeds were procured by Little
to be made to Mrs. Little, with intent to delay, hinder, and
defraud his creditors. We have above disposed of the ques-
tion of the invalidity of the deeds of Thompson, administra-
tor of Rogers, and of the second deed by Reavis and wife.

We have examined the mass of evidence in this record,
with great care. All the testimony of Kirksey, the com-
plainant, tending to prove transactions with, and statements
by Little, the intestate, we feel bound to suppress.—Code of
1876, § 3058. So, there is much other testimony offered on
each side, which is either hearsay, or opinion. We will not
specify the evidence falling under these classes, but, in our
deliberations, we will disregard it. Questions arising out of
the form of interrogatories are abandoned by the agreement
accompanying the submission. "Either party has the right
to except to any part of the depositions offered, provided
that such exception shall not be to such matter as would be
remediable by retaking the deposition of the witness." Such
is the substance of the agreement. We will take no note of
objections, based on the leading form of the interroga-
tories.

As to the three deeds, bearing date September 2, 1867,
February 15, 1868, and April 9, 1868, we think there is an
entire absence of testimony that either of them was procured
to be executed as they were, with intent to delay, hinder, or
defraud any one, complainant or any other. The account
with Little was opened by Kirksey & Carpenter after the
last of those three deeds was executed, and more than a year
after this the balance against Little was only $581. The
main deed—that which conveyed property costing $6,400—
had then been recorded in the probate office of the county
for more than a year. And up to the death of Mr. Little,
near three years later, Kirksey & Carpenter still credited
Little more liberally than they had done before. And when
they took a mortgage from Little to secure themselves, they
took it on other lands than those conveyed to Mrs. Little.
A still more pregnant circumstance is found in the fact, that
although, in each of the three bills, it is charged that the
deeds were thus made to defraud Kirksey & Carpenter, yet
they neither aver nor prove that, at the time they so gave
credit to Little, they had not knowledge that said deeds had
been made to Mrs. Little. The bills, as to the three tracts

[Shelton v. Carpenter et al.]

of land first purchased, must fail, under the rules we have declared above.

In case 249, the decree of the chancellor is affirmed.

In case 250, the decree of the chancellor is reversed, and a decree here rendered, granting to complainant relief as to the lands purchased from Thompson, administrator of Rogers, and denying it as to lands purchased from Mary Beatty. All other questions are reserved for decision by the chancellor.

In case 251, the decree of the chancellor is reversed, and a decree here rendered, granting relief to complainant, and declaring the lands therein described are subject to his claim. All other questions are reserved for decision by the chancellor.

