# Allen, *et al. v.* Caldwell, Ward & Co.
## and
# Caldwell, Ward & Co., *v.* Allen, *et al.*

*Action by Broker to Recover Advances Made as the
Agent of the Principal in a Wager Contract
Foreclosure.*

(Decided Dec. 20th, 1906. 42 So. Rep. 855.)

1. *Gaming Contract; Futures; Right of Broker to Recover Advances.*—A contract for the sale of cotton on margin, where neither party expects or agrees to receive or deliver the acutal cotton sold or bought, is a wager contract under the common law; yet a broker, having no interest in the transaction and not sharing in the profit or loss, is entitled to be reimbursed for advances made for his principal.

2. *Contracts; Legality of Objects; Conflict of Laws; What Law Governs.*—Louisiana not being of common law origin with Alabama, when a contract to be performed in Louisiana is sued on in Alabama, and proof is not made of the laws of Louisiana, the Alabama court will be governed by the statutes of Alabama, when applicable to the facts, it being impossible to apply the common law.

3. *Gaming Contract; Burden of Proof.*—One asserting that a contract is violative of the statute making contracts based on a gambling consideration void, has the burden of proving it

4. *Payment; Invalidity of Note Given as Evidence of Debt.*—The creditor's right to sue on the debt is not affected by a note given for the pre-existing debt, even if the note was obtained through fraud.

5. *Fraudulent Conveyances; Invalidity as Against Existing Creditors.*—A voluntary conveyance from a husband to his wife is void as to existing creditors.

6. *Same; Effect as to Subsequent Creditors.*—A voluntary conveyance from a. husband to his wife is valid, where all of his existing creditors were secured, and it does not appear that he foresaw future liability, as to subsequent creditors, un-

der the rule that a voluntary conveyance is valid against subsequent creditors in the absence of actual fraud.

7. *Same; Effect of Delay in Recording Conveyance.*—The failure to record a deed voluntarily executed by a husband to his wife is not, of itself, evidence of a fraudulent conveyance, and where consistent with good intentions, the law attributes no bad motive to the grantee.

8. *Same; Action to Set Aside; Sufficiency of Evidence.*—The evidence in this case examined and held not sufficient to show that the deed from the husband to the wife was executed at a later date than is purported on its face, and after the debt to plaintiffff was incurred.

9. *Same; Subsequent Creditors; Burden of Proof.*—The burden is on the creditor to show that the deed was actually executed subsequent to the creation of the debt where the deed on its face antedates the creation of the debt.

APPEAL from Montgomery City Court.

Heard before Hon. A. D. SAYRE.

Bill by Caldwell, Ward & Co. against Charles A. Allen and others. Defendants appeal, and plaintiffs file cross-appeal. Affirmed.

This was a bill alleging an indebtedness of $2,300, contracted in January, 1904, by Allen & Leak, a then partnership composed of Charles Allen and W. W. Leak, and sought to have set aside certain conveyances as fraudulent and void. The case made by the bill is that Allen & Leak became indebted to complainants in January, 1904, and to close same up executed a note payable to complainants in 60 days, and that the said note has not been paid; that some time in 1903 Allen made a conveyance of the property described in the bill to his wife, Eliza Allen, upon a recited consideration of 'love and affection, and that in 1904, after the note was given, made a conveyance of certain other property to his said wife, for a recited consideration of love and affection; that these conveyances were made to defraud creditors —and sought to have same annulled and subjected to complainants' debt. The bill also alleges that the record of the conveyances was withheld for fraudulent and illegal purposes. Allen admitted the indebtedness, but alleged that it was the result of a gambling deal, by which

[Allen, et al. v. Caldwell, Ward & Co. and Caldwell, Ward & Co. v. Allen, et al.]

he bought of the complainants cotton on margins; neither party expecting or agreeing to receive or deliver the actual cotton. He denied that the conveyance of the lands was for the purpose of delaying or hindering creditors. The court decreed a sale of the lands mentioned in the last conveyance, and declared a lien on the same in favor of complainants, but declared that the sale prior to the contracting of this debt was not fraudulent and void as to complainants, and declined to declare the conveyance null and void. A cross-appeal followed this decision, and each assign certain portions of the decree as error.

MARKS & SAYRE, for appellant on direct appeal and for appellee on cross.—The law of Alabama governs as to the contract for two reasons. 1st, no proof of the law of Louisiana on the subject was made; 2nd, the notes were payable in this state.—*Peet v. Hatcher,* 112 Ala. 514. The debt was based on a gambling consideration and was void.—*Hawley v. Bibb,* 69 Ala. 52; *Peet v. Hatcher, supra.*

GUNTER & GUNTER, and FRED S. BALL, for appellee on direct appeal and for appellant on cross.—No brief came to the reporter.

ANDERSON, J.—From the evidence introduced there can be little or no doubt that Caldwell, Ward & Co. were brokers and agents for a commission in negotiating and executing contracts for the sale of cotton for the firm of Allen & Leak through the New Orleans Cotton Exchange, or that the note was given for the commissions due them and advances made by them to cover losses sustained by the said Allen & Leak by virtue of the transaction. Under the common law, even if such contracts are wagers, if in them the broker has no interest, does not share whatever in the profit and loss, the principal is bound to reimburse him for advances.— *Hawley v. Bibb,* 69 Ala. 52.

It is contended by the appellants (Allen et al.) that, although they might be liable under the common law,

the contrct was for a gambling consideration, and therefore, void, under section 2163 of the Code of 1896, in that it was not within the contemplation of the parties to actually buy and sell cotton, nor to receive or deliver it at the time appointed for the delivery. Conceding that the contracts were to be performed in New Orleans, there has been no proof of the laws of Louisiana; and, it being a state not of common origin with Alabama, we cannot apply the common law, but will be governed by our own statutes, when applicable to the facts, in enforcing and construing contracts in the courts of this state.—*Peet v. Hatcher*, 112 Ala. 514, 21 South. 711, 57 Am. St. Rep. 45; *Kennebrew v. Automatic Machine Co.*, 106 Ala. 377, 17 South. 545. "When the parties agree at the time of making the contract, or the intent is, that no property shall pass, or any delivery be made, but to pay the difference between the price agreed on and the market price at some future day, whatever may be the form of the contract, it is a wager upon the fluctuations of the market, and comes within the denunciation of the statute pronouncing void all contracts founded in whole or in part on a gambling consideration. On the other hand, ownership or possession of the property at the time of making the contract is not essential to the validity of a contract for delivery at some future day, and if the parties understand and intend that the seller shall deliver and the buyer pay for the property at the maturity of the contract, it is a legal and valid transaction, which the law will uphold; and that the seller may have the option to deliver at any time before the maturity of the contract makes no difference."—*Perryman v. Woolffe*, 93 Ala. 290, 9 South. 148; *Hawley v. Bibb*, 69 Ala. 52; *Wall v. Schneider*, 59 Wis. 352, 18 N. W. 443, 48 Am. Rep. 520. The burden of proof was upon the parties seeking to avoid the contract to show that it was violative of the statute, and we agree with the court below in holding that they did not satisfactorily do so.

It is contended by the respondents (Allen et al.) that they were induced to sign the note upon the fraudulent promise of a member of complainants' firm. Should this be true, but which we do not concede, it would not af-

fect the complainants' right to enforce the collection of the debt. The complainants seek the collection of a debt contracted in January, 1904, and aver that the note was given in February, 1904, simply as an evidence of the debt. The respondents admit in their answer that the debt was contracted by the firm of Allen & Leak, under an agreement with Abercrombia, a member of the firm of Caldwell, Ward & Co., but claim that it was a gambling debt. Moreover, Leak testifies that Allen knew and understood all about the cotton transaction. We have held that it was not a gambling debt, and, as the answer admits that it was a firm debt, it would be immaterial whether the note is binding or not, since each member of the firm would be liable. We do not understand the bill in the case at bar to be a suit upon the note, but one to enforce the collection of the debt evidenced by the note, and to set aside certain conveyances as an incident thereto. The complainants being existing creditors when the deed of February 9, 1903, was made, said conveyance, being voluntary, was void as to them, and the judge of the city court properly subjected the property therein conveyed to the satisfaction of complainant's debt.—*McTeers v. Perkins,* 106 Ala. 411, 17 South. 547.

In discussing the distinction between the rights of existing and subsequent creditors, our court in the case of *Seals v. Robinson,* 75 Ala. 363, said: "It is settled by a long line of decisions in this court that a voluntary conveyance, a conveyance not resting upon a valuable consideration, is void per se, without any regard to the intention of the parties, however free from covin or guile they may have been, as to the existing creditors of the donor, without regard to his circumstances, or the amount of his indebtedness, or the kind, value, or extent of the property conveyed, if it be not exempt from liability for the payment of debts. As to subsequent creditors, if it be not shown that there was mala fides, or fraud in fact in the transaction, the conveyance is valid and operative. But, if actual fraud is shown, it is not of importance whether it was directed against existing or subsequent creditors. Either can successfully im-

peach and defeat the conveyance, so far as it breaks in upon the right to satisfaction of their debts. This distinction between existing and subsequent creditors is that, as to the former, the conveyance is void per se, for the want of a valuable consideration; as to the latter, because it is infected with actual fraud.—*Miller v. Thompson*, 3 Port. 196; *Cato v. Easley*, 2 Stew. 214; *Moore v. Spence*, 6 Ala. 506; *Costillo v. Thompson*, 9 Ala. 937; *Thomas v. Degraffenreid*, 17 Ala. 602; *Foote v. Cobb*, 18 Ala. 585; *Stokes v. Jones*, 18 Ala. 734, s. c. 21 Ala. 731; *Gannard v. Eslava*, 20 Ala. 732; *Randall v. Lang*, 23 Ala. 751; *Stiles v. Lightfoot*, 26 Ala. 443; *Huggins v. Perrine*, 30 Ala. 396, 68 Am. Dec. 131; *Cole v. Varner*, 31 Ala. 244; *Pinkston v. McLemore*, 31 Ala. 308; *Williams v. Avery*, 38 Ala. 115. The right of the subsequent creditor depends upon the existence of actual fraud in the transaction. The burden of proving it rests upon him.—Bump on Fraud, Conn. 308. The general rule applies that fraud must be proved. It will not be presumed, if the facts and circumstances shown in evidence may consist with honesty and purity of intention. But it must not be supposed that fraud must be proved by direct and positive evidence, or that it is incapable of proof by circumstances leading to a rational, well-grouded conviction of its existence. There is no fact which may be the subject of controversy in a judicial proceeding or criminal that is not the subject of proof by circumstantial, as distinguished from positive or direct, evidence. As the fraud vitiating a transaction at the instance of creditors lies in the intention of the parties to it, vicious intent is not generally susceptible of proof otherwise than by evidence of circumstances indicative of it. The intention is a mentale motion of which the external signs are the acts and declarations of the parties, taken in connection with the concomitant circumstances.—*Hubbard v. Allen*, 59 Ala. 283; *Harrell v. Mitchell*, 61 Ala. 270; *Thames v. Rembert's Adm'r*, 63 Ala. 561; *Pickett v. Pipkin*, 64 Ala. 520."

We cannot say that the proof in the case at bar shows, or affords a strong enough inference, that the deed of October, 1903, was made by C. A. Allen for the purpose

of defrauding his creditors. He practically owed no debts other than those which were secured, and it was not necessary for him to get his other property out of the way. As all the existing creditors were secured, and as Allen seems to have contracted no debts except those growing out of certain cotton transactions, we cannot hold that he anticipated incurring future liabilities, and made the conveyance of October, 1903, for the purpose of defeating creditors not then existing, and who probably never would have existed, had the market gone his way. In order to condemn the deed of October, 1903, we must believe from the evidence that, when it was executed by Allen, he anticipated these deals in cotton, three months later, and that the property was conveyed for the purpose of defeating the collection of debts thus incurred, as the old debts were secured, and the testimony reveals no subsequent ones, other than those growing out of a speculation in cotton in January, 1904. The evidence fails to show that the deed was designedly withheld from the record for the purpose of obtaining credit, which the recording of the instrument would impair. The mere failure to record is not evidence, of itself, of a vicious intent, and where a failure to record is consistent with good intentions the law will attribute no bad motive to the grantee.—*Lehman, Durr & Co. v. Van Winkle,* 92 Ala. 443, 8 South. 870.

'It is also contended by counsel that the deed dated October, 1903, was not in fact executed until just before it was filed for record the following April, and was, therefore, subsequent to complainants' debt. If it was not made until after January, 1904, it would, of course, be void as to complainants and would be in the same category with the one heretofore condemned. But the proof is not sufficiently convincing for us to hold that the deed was not made until after January, 1904. It is true the deeds were not recorded until the following April, which is explained by Mrs. Allen. McDade testified as an expert that, when the deeds were filed for record, they had the appearance of being recently written; but such testimony was not sufficient to overcome the evidence of Allen, Mrs. Allen, and the officer, not-

withstanding the officer is a cousin of Mrs. Allen. More-
over, the testimony of McDade related to both deeds, and
if they were prepared and executed just before filing
for record, and dated back, it stands to reason that the
date of the last one would have also been fixed, so as to
antedate complainants' debt. It is true the first deed
conveyed the bulk of Allen's property, and that the
property conveyed by the last one was mortgaged, and
it may have been purposely fixed so as to make it sub-
ject to complainants' debt, in order to give a coloring
of fairness to the whole matter. But the burden is on
the complainants to show that the deed was executed
subsequent to the date of the acknowledgment and to
their debts, which we are not willing to hold has been
done.

The judgment of the city court is affirmed upon both
appeals.

Affirmed.

TYSON, C. J., and DOWDELL and McCLELLAN, JJ., con-
cur.