(94 South. 477)

**ALLEN et al. v. OVERTON et ux.**

(8 Div. 459.)

(Supreme Court of Alabama. Oct. 26, 1922.
Rehearing Denied Dec. 7, 1922.)

1. **Fraudulent conveyances ⬤⇒95(1)—Voluntary conveyance to wife not invalid as respects subsequent creditors.**

A voluntary conveyance from a husband to his wife is valid, where all of his existing creditors were secured, and it does not appear that he foresaw future liability as to subsequent creditors, under the rule that a voluntary conveyance is valid against subsequent creditors in the absence of actual fraud.

2. **Fraudulent conveyances ⬤⇒154(1) — Bad motive not attributed to grantee failing to record deed where consistent with good intentions.**

The mere failure to record a deed is not evidence of itself of a vicious intent, and, where a failure to record is consistent with good intentions, the law will attribute no bad motive to the grantee.

3. **Fraudulent conveyances ⬤⇒74(3)—Where grantor receives benefit and grantee suffers detriment as consideration, conveyance not voluntary.**

If the grantor in a conveyance receives a benefit, or the grantee suffers detriment as the consideration of the conveyance, then the consideration is valuable, and the instrument is not a voluntary conveyance.

4. **Fraudulent conveyances ⬤⇒74(3)—Inadequacy of consideration does not alone make instrument voluntary.**

The inadequacy of the consideration of a conveyance, the difference between the value of the property and the consideration, with other facts, may indicate an actual intent to defraud, but does not make the instrument voluntary.

5. **Fraudulent conveyances ⬤⇒168 — Valuable inadequate consideration does not render conveyance void unless grantee knew of, or participated in, scheme to defraud grantor's creditors.**

If the consideration of a conveyance is valuable, though inadequate, it is not void unless there are other facts showing the grantee knew of or participated in a scheme with grantor to hinder, delay, or defraud his creditors.

6. **Fraudulent conveyances ⬤⇒74(3)—"Voluntary conveyance" is one resting upon no valuable consideration.**

A "voluntary conveyance" is one resting on no valuable consideration.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Voluntary Conveyance.]

7. **Fraudulent conveyances ⬤⇒74(3)—Voluntary conveyance void per se as to creditors existing at execution and delivery unless property exempt.**

A voluntary conveyance as to creditors existing when executed and delivered is void per se without regard to the intentions of the par-

ties, unless the property is exempt from payment of debts of the grantor.

8. **Fraudulent conveyances ⬤⇒74(4)—Voluntary conveyance valid as to creditors subsequent to delivery unless fraudulent.**

A voluntary conveyance as to subsequent creditors is valid and operative unless there was actual fraud in the transaction.

9. **Fraudulent conveyances ⬤⇒274—Burden of proving fraud in voluntary conveyance on subsequent creditor.**

As the right of a subsequent creditor depends upon the existence of fraud in the transaction resulting in a voluntary conveyance, the burden of proving it rests upon him.

10. **Fraudulent conveyances ⬤⇒271(3)—Burden of proving fraud to invalidate conveyance on complainant.**

The burden of allegation and proof of the fraud to invalidate a conveyance rests upon the complainant.

11. **Fraudulent conveyances ⬤⇒95(6)—Deeds by husband to wife in consideration of existing debt and assumption of mortgage held not fraudulent as to subsequent creditors.**

Where a husband executed and delivered to his wife seven deeds, four of which recited the consideration of $1 and love and affection, and the assumption by her of the mortgage debt on the property conveyed, and one deed recited the same consideration except the assumption of the mortgage debt, and recited the assumption of an annual lien debt to be paid to another for life, and it appeared by the evidence that the husband was indebted to his wife, which was a part of the consideration for the deeds, held, that the deeds were not fraudulent as to the subsequent creditors of the husband.

Appeal from Circuit Court, Madison County; Osceola Kyle, Judge.

Suit by B. M. Allen and others against A. E. Overton and wife to cancel deeds. From a decree dismissing the bill, complainants appeal. Affirmed.

Douglass Taylor and Cooper & Cooper, all of Huntsville, and Allen & McEwen, of Birmingham, for appellants.

Conveyances which are fraudulent as to existing creditors are fraudulent as to subsequent creditors. 75 Ala. 363. If grantee had notice of such facts and circumstances as would arouse suspicion of an ordinarily prudent person, this is sufficient notice of grantor's fraudulent intent. 203 Ala. 395, 83 South. 139. Where conveyances are withheld from record, this is a suspicious circumstance that calls for explanation on the part of the parties. 75 Ala. 363; 195 Ala. 501, 70 South. 143. Where there are appropriate averments and evidences of fraud, the burden is upon respondent to negative allegations charged in the bill and to overcome the presumption of unfairness and mala fides. 20 Cyc. 447; 8 Ala. 104; 111

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Ala. 221, 20 South. 445; 119 Ala. 158, 24 South. 31; 121 Ala. 100, 25 South. 723; 125 Ala. 372, 28 South. 30; 131 Ala. 333, 30 South. 868; 132 Ala. 107, 31 South. 524; 133 Ala. 478, 31 South. 970; 134 Ala. 580, 33 South. 665; 149 Ala. 112, 43 South. 31.

R. E. Smith, of Huntsville, for appellees.

To enable subsequent creditors to obtain relief they must allege and prove actual fraud. 195 Ala. 50, 70 South. 175; 192 Ala. 312, 68 South. 306; 75 Ala. 363. The failure to record a conveyance is not in itself evidence of fraudulent intent. 195 Ala. 501, 70 South. 143; 200 Ala. 525, 76 South. 851. Fraud will not be imputed when the facts and circumstances from which it is supposed to arise may reasonably consist with honest intentions. 84 Ala. 259, 4 South. 137; 195 Ala. 50, 70 South. 175.

MILLER, J. This is a bill in equity as amended by B. M. Allen and others under the firm name of Allen, Bell & Sadler, against A. E. Overton and his wife, Lucy Overton. It seeks to have canceled and declared void seven deeds executed by A. E. Overton to Lucy Overton as a fraud against complainants, whose debts, due by A. E. Overton, were contracted after the execution of the conveyances. It alleges the defendant A. E. Overton was insolvent; that the instruments conveyed substantially all of his property; that they were made without valuable consideration for the purpose of hindering, delaying, and defrauding his creditors, both those to whom he was indebted at the time and those to whom he afterwards became indebted. The answer of each defendant admitted the execution and delivery of the deeds, that they conveyed substantially all of his property, but they put in issue by direct denial the other material averments of the complaint.

The decree of the court on final hearing, on pleading and proof, denied complainant relief, dismissed the bill, and taxed complainants with the court costs. This appeal is prosecuted by complainants from that decree, and it is assigned as error.

On June 14, 1916, Judge W. T. Lawler was killed. D. D. Overton, brother of the defendant A. E. Overton, was charged with the crime. He was a fugitive from justice; had left for a foreign country with no intention of returning within five years. The passion of a majority of the people was inflamed against both brothers and other members of their family. The defendant's life had been threatened; so, to preserve his estate for his wife and to pay the debt he owed her and other lien and mortgage debts on the property, A. E. Overton made and executed on the 1st of September, 1916, the seven deeds conveying the property to his wife. Four deeds recite the consideration as $1 cash, love and affection, and the assumption by her of the mortgage debt on the property conveyed; one deed recites the same consideration as above, except, instead of assumption of a mortgage debt, it recites assumption of a $300 annual lien debt to be paid to Mrs. King during her life; and the other two deeds recited "$1 cash and love and affection" as the consideration. All of the deeds were executed and acknowledged on the same day, September 1, 1916, and all were delivered at the same time to the grantee, Mrs. Overton, on that date by her husband. Some of them were filed for record in January, some in February, and some in April, 1917. D. D. Overton was captured and placed in the Birmingham jail before October 9, 1916, charged with murdering Judge Lawler. He employed complainants to defend him. On October 9, 1916, he executed two notes to them each for the sum of $2,000, one payable in 6 and the other 12 months from date. These notes were sent to the defendant A. E. Overton and the other brothers and relatives to sign as sureties. They were signed by D. D. Overton, A. E. Overton, H. C. Overton, T. B. Overton, and J. L. Overton. Both notes were reduced to judgment May 27, 1918; both belong to the complainants; execution was issued on each and return made by the sheriff, "No property found."

The complainants introduced evidence showing that on May 15, 1916, a note was given by A. E. Overton to W. R. Rison Banking Company, and the balance due and unpaid on the note is $3,077.25. The evidence of the defense was that this note was a debt of D. D. Overton, and that H. C. Overton, T. B. Overton, and A. E. Overton were sureties. The bank held collateral given it by D. D. Overton to secure the note which exceeded in amount the amount of the debt; and at the time of the execution of the deeds, on September 1, 1916, D. D. Overton, H. C. Overton, and T. B. Overton had property sufficient to pay the note. The only debt shown to have been contracted by A. E. Overton after the execution of the deeds to his wife was the surety debt to complainants.

[1] In Allen v. Caldwell, Ward & Co., 149 Ala. 293 (42 South. 855), this principle is declared in the opinion, which is expressed in headnote 6, as follows:

"A voluntary conveyance from a husband to his wife is valid, where all of his existing creditors were secured, and it does not appear that he foresaw future liability, as to subsequent creditors, under the rule that a voluntary conveyance is valid against subsequent creditors in the absence of actual fraud."

It appears from the evidence that this debt of the bank at the time of the execution of the deeds was secured; and from the evidence the defendants did not know complainants at that time. D. D. Overton was a fugitive from justice, had not been arrested, and he had no intention of surrendering.

There is no evidence indicating when the deeds were executed either of the defendants contemplated that A. E. Overton would create an obligation to the complainants or that either foresaw future liability from any subsequent creditors.

[2] The deeds were executed and delivered on September 1, 1916; and they were not recorded until January, February, and April, 1917. There is no evidence that they were designedly kept off of the record to obtain credit; there is no evidence that any one was injured thereby, and this court has said:

"The mere failure to record is not evidence, of itself, of a vicious intent, and where a failure to record is consistent with good intentions the law will attribute no bad motive to the grantee." Allen v. Caldwell, Ward & Co., 149 Ala. 299, 42 South. 858; Mathews v. Carroll, 195 Ala. 505, headnote 5, 70 South. 143.

Mrs. Overton, without objection, testified:

"At the time the deeds were made my husband owed me $500 which I had inherited from my Grandmother Adams' estate. He has used this money. The payment of this debt was part of the consideration for which the deeds were made. And as the further consideration for making the deeds I agreed with my husband to assume and pay off the mortgage debts on the land and to pay Miss King the $300 a year as is recited in the said several deeds. I have paid the mortgages on the Moore's mill property and on the school street property. At the time I did not know the complainants, neither did my husband to my knowledge know them. He did not tell me and I did not know that he contemplated employing them at the time. At the time there was no conversation between my husband and myself relative to making any new debts. The deeds were not made with any understanding between my husband and I to hinder, delay, or to defraud any one who held any claim against my husband, nor who might thereafter be a creditor of him. I did not know my husband owed any debts except the mortgages on the land and the claim of Miss King which was being taken care of by the transaction. I knew about what the reasonable value of the property was and knew that the debts, mortgages, and claim of Miss King, were just about as much as what the property was worth."

A. E. Overton on this subject said:

"Each deed recites a consideration of $1 and love and affection and other consideration of the assumption and payment of the mortgage indebtedness as recited in each deed. I owed my wife $500 cash money at the time the deeds were executed and the cancellation of this debt by her was part of the consideration paid."

He also testified:

"I did not contemplate at that time the making of any new or additional debt."

[3-5] If the grantor in a conveyance receives a benefit or the grantee suffers detriment as the consideration of the conveyance, then the consideration is valuable, and the instrument is not a voluntary conveyance. The inadequacy of the consideration, the difference between the value of the property and the consideration, with other facts, may indicate actual intent to defraud, but does not make the instrument voluntary. If the consideration of the conveyance is valuable, though inadequate, it is not void unless there are other facts showing the grantee knew of or participated in a scheme with the grantee to hinder, delay, or defraud his creditors. London v. Anderson Brass Works, 197 Ala. 17, 72 South. 359.

[6-9] A voluntary conveyance is one resting on no valuable consideration. As to existing creditors when executed and delivered, it is void per se without regard to the intentions of the parties, unless the property is exempt from the payment of the debts of the grantor. As to subsequent creditors it is valid and operative, unless there was actual fraud in the transaction; and the burden of proving the existence of the actual fraud in the transaction rests upon the subsequent creditor.

"The right of the subsequent creditor depends upon the existence of actual fraud in the transaction; the burden of proving it rests upon him." Seals v. Robinson, 75 Ala. 363; Allen v. Caldwell, 149 Ala. 293, 42 South. 855; McCrory v. Donald, 192 Ala. 314, 68 South. 306.

In writing on the subject of a voluntary conveyance, meaning conveyance without valuable consideration, this court, in McCrory v. Donald, 192 Ala. 314, 68 South. 307, wrote:

"A subsequent creditor cannot complain of such conveyance or have same set aside on the ground that it was made with the intent to hinder, delay, or defraud creditors, unless it is alleged in the bill, and the evidence sustains the allegation, that a fraud was committed by the parties to the conveyance and that the creditors suffered thereby."

We find no evidence in the record showing knowledge of or participation by Mrs. Overton in her husband's fraudulent intent, if any he had, at the time he executed the deeds to her; and we find no evidence convincing in its nature of the existence of actual fraud in the transaction. Five of these conveyances are based on a valuable consideration as well as a good consideration on their faces; and two of them in their body are based on a good consideration—nominal, "$1, and love and affection." These two deeds appear in their body to be voluntary, based on a good consideration, and not on a valuable consideration. Folmar v. Lehman–Durr Co., 147 Ala. 472, 41 South. 750; London v. Anderson Brass Works, 197 Ala. 20, headnote 2, 72 South. 359. However, these seven deeds were all executed, all acknowledged, before the same official and delivered on the same day. The oral evidence of the grantor and the grantee, and it is not contradicted, clearly indicate the consideration for all of the seven deeds was a cancellation of the $500 debt due Mrs. Overton by her husband, an assumption

by her of all the mortgage debts on the property, and the agreement by her to pay Mrs. King annually during her life $300, which was a lien by contract on a part of the property conveyed, and love and affection. This consideration for all the conveyances seems to be the clear intent of the parties; and it makes all the deeds based on a valuable and a good consideration; and this oral evidence makes none of the seven instruments voluntary conveyances—conveyances without a valuable consideration. It may be this oral evidence was inadmissible as to the valuable consideration—payment of the $500 debt—to the two deeds, which recite "$1 and love and affection," as the consideration, because this oral evidence varied the consideration in kind named in the instruments, and changed their legal effect (London v. Anderson Brass Wks., 197 Ala. 16, headnotes 1 and 17, 72 South. 359), but that question is not before us. The testimony is in the record, showing the entire consideration. We must consider the evidence as presented by the parties. Hays v. Lemoine, 156 Ala. 465, headnote 3, 47 South. 97. These seven instruments under the entire evidence, oral and written, as presented by the record, should be and are considered by the court as representing only one transaction between the parties. The payment of the $500 debt is mingled in the consideration of each instrument under the evidence.

[10] Fraud is never presumed; and, when the validity of conveyances is questioned on that ground, it must be alleged and proven by the complainant. The burden of allegation and proof of the fraud rests on the complainants. Speaking on this subject, this court, in Pollak v. Searcy, 84 Ala. 262, 4 South. 139, said:

" 'We are not allowed by the rules of law, any more than by the principles of common charity, to suppose fraud, when the facts out of which it is supposed to arise may well consist with honesty and pure intention.' Smith v. Branch Bank, 21 Ala. 125; Slites v. Lightfoot, 26 Ala. 443.

" 'Courts will not strain to force conclusions of fraud; and if the circumstances relied on to sustain that allegation are fairly susceptible of an honest intent, that construction should be placed upon them.' Ala. L. Ins. & Tr. Co. v. Pettway, 24 Ala. 544.

" 'Fraud will not be imputed, when the facts and circumstances from which it is supposed to arise may reasonably consist with honest intentions.' Thames v. Rumbert, 63 Ala. 561; Pickett v. Pipkin, 64 Ala. 520; Cromwell v. McCauley, 67 Ala. 542."

This court again, in London v. Anderson Brass Works, 197 Ala. 20, 72 South. 361, declared this rule:

"If the consideration paid by the grantee was an existing debt due to him from the grantor, he must not only show its bona fide existence, but must also show that it was adequate; that is that the value of the property was no more than a fair equivalent for the amount of the debt. If this is shown, the intention of the parties to thereby hinder, delay, or defraud is wholly immaterial, and cannot defeat the conveyance."

This principle is supported by Crawford v. Kirksey, 55 Ala. 282, 28 Am. Rep. 704; Moore v. Penn, 95 Ala. 200, 10 South. 343; Chipman v. Glennon, 98 Ala. 263, 13 South. 822. This rule has peculiar and striking application to the facts as proven in this case almost, if not entirely, without conflict.

[11] The consideration paid by the grantee, Mrs. Overton, for the property, was the cancellation of an existing debt due her by the grantee, Mr. Overton, an assumption by her of the existing mortgage debts, on part of the property, due others by the grantor, and the assumption by her of an existing annual lien debt on some of the property due Mrs. King during her life by the grantor. All of these existing debts of the grantor, A. E. Overton, were proven by the evidence; they are not in dispute; they are denied by no one; and they were all bona fide existing debts when the conveyances were executed. The evidence shows the property conveyed by the instruments was received at a fair valuation; the price paid for it was a fair equivalent to its reasonable value; and under the evidence there was no material difference between the fair value of the property conveyed and the amount of the existing debts of the grantor paid by the conveyances. The complainants offered no evidence on these propositions. The evidence on these points was presented by the respondents in their testimony. Under the evidence presented, the conveyances should not be annulled.

It follows that the proof does not sustain the averments of the bill as amended; the court below did not err in so finding and in dismissing it; and its decree, being free from error, is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.